456

Manchester District Court
No. 98-258

STAFFING NETWORK, INC.

v.

GEORGE PIETROPAOLO

December 5, 2000

*Robert S. Stephen*, of Manchester, by brief, and *Devine, Millimet & Branch, P.A.*, of Manchester (*Alexander J. Walker, Jr.* orally), for the plaintiff.

*Beliveau & Fradette, P.A.*, of Manchester, (*Clifford P. Gallant, Jr.* on the brief and orally), for the defendant.

NADEAU, J. The plaintiff, Staffing Network, Inc., appeals an order of the Manchester District Court (*Lind*, J.) dismissing its suit in assumpsit against the defendant, George Pietropaolo, for lack of personal jurisdiction. We reverse and remand.

This action arises out of a client service agreement (agreement) and personal guaranty executed by the defendant in January 1997.

The plaintiff, a New Hampshire corporation, entered into the agreement with Watson Industries (Watson), a New York business. The defendant executed the agreement as Watson's president and contemporaneously executed a personal guaranty. Under the agreement, the plaintiff agreed to provide employees at Watson's work site in New York, to pay their wages, and to administer other aspects of their employment. In exchange, Watson agreed to pay the plaintiff for each pay period an amount consisting of the gross wages paid under the agreement, an assessment fee, and other charges.

When Watson failed to pay the amounts allegedly due under the agreement, the plaintiff sued the defendant as the personal guarantor of the agreement. After a hearing, the trial court granted the defendant's motion to dismiss for lack of personal jurisdiction, finding that the plaintiff elected to do business in New York, and the New York defendant had not directed any activity toward New Hampshire. This appeal followed.

■ "The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant." *Phelps v. Kingston*, 130 N.H. 166, 170, 536 A.2d 740, 742 (1987). While the general rule applicable to motions to dismiss is that all facts properly pleaded by the plaintiff are deemed true, *see Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610, 392 A.2d 576, 578 (1978), when those facts relate to personal jurisdiction, the plaintiff must offer affirmative proof. *See Brother Records v. HarperCollins Publishers*, 141 N.H. 322, 324, 682 A.2d 714, 716 (1996), *cert. denied*, 520 U.S. 1103 (1997). A *prima facie* showing of jurisdictional facts will defeat a defendant's motion to dismiss. *See id.* at 325, 682 A.2d at 716.

In this case, the plaintiff appended to the writ of summons a copy of the agreement identifying the plaintiff as a New Hampshire corporation with its principal place of business in Manchester and providing that the agreement was to be construed under New Hampshire law. After the defendant contested jurisdiction, the plaintiff filed an affidavit of its president and copies of time sheets and related information sent by Watson via facsimile transmission to the plaintiff's office in New Hampshire during the administration of the agreement.

Determining whether a court may exercise personal jurisdiction over a defendant requires a two-part analysis. *See Phelps*, 130 N.H. at 170, 536 A.2d at 741. First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied. *See id.* at 170, 536 A.2d at 741-42.

RSA 510:4, I (1997), the New Hampshire long-arm statute, permits jurisdiction over "[a]ny person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state." We have consistently interpreted this statute to grant jurisdiction whenever the requirements of the Due Process Clause of the United States Constitution are satisfied. *See Estabrook v. Wetmore*, 129 N.H. 520, 523, 529 A.2d 956, 958 (1987).

The federal Due Process Clause permits the exercise of personal jurisdiction over a defendant if "the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brother Records*, 141 N.H. at 324, 682 A.2d at 715 (quotations and ellipsis omitted). Whether constitutionally adequate contacts exist depends on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Jurisdiction can be "general," where the defendant's contacts with the forum State are "continuous and systematic," or "specific," where "the cause of action arises out of or relates to the defendant's forum-based contacts." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (quotation omitted). As the record reveals only contacts related to this agreement, we review for specific personal jurisdiction only.

Courts interpreting the federal Due Process Clause have adopted a tripartite inquiry for analyzing specific jurisdiction. *See id.* at 60-61. The focus of this inquiry is, first, whether the cause of action arises from, or relates to, the defendant's contacts with New Hampshire. *See id.* In making this assessment, we look to "all of the communications and transactions between the parties before, during, and after the consummation of the contract." *Ganis Corp. of California v. Jackson*, 822 F.2d 194, 197 (1st Cir. 1987). A finding of jurisdiction will be more likely if we find "plus" factors in addition to the mere existence of a contract with a New Hampshire resident. *Id.* "Plus" factors include, but are not limited to: (1) the forum State being the location to which payments under the contract were to be sent; (2) a choice of law provision in the contract selecting the forum State's laws as governing the transaction; and (3) the use of the plaintiff's form documents bearing its address in the forum State. *See id.* at 198.

Secondly, we inquire whether the defendant's contacts are such that he should reasonably have anticipated being haled into our courts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This second inquiry looks for "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). While a defendant need not have been physically present in the forum State, his contacts must be sufficient to have reasonably foreseeable consequences within the forum State. *See Tavoularis v. Womer*, 123 N.H. 423, 427, 462 A.2d 110, 113 (1983). "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476.

Finally, we consider whether it would be fair and reasonable to require the defendant to defend the suit in New Hampshire. *See Phelps*, 130 N.H. at 172, 536 A.2d at 743. In conducting this review, the court may consider the following factors:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quotations omitted).

The cause of action in this matter arises from and is related to the defendant's contacts with New Hampshire. As noted above, the court in *Ganis Corp.* identified some "plus" factors for making this determination. Two of those factors are found in this case. First, the agreement provided it would be construed in accordance with New Hampshire law. Because the agreement and guaranty were part of the same transaction, we construe their terms together. *See Bogosian v. Fine*, 99 N.H. 340, 344, 111 A.2d 190, 193 (1955). While not conclusive, a choice of law provision militates in favor of finding jurisdiction in the State whose laws govern the contract. *See Ganis Corp.*, 822 F.2d at 198. Second, payments under the contract were to be directed to the New Hampshire plaintiff at its place of business in Manchester.

In addition to the *Ganis Corp.* "plus" factors, we find additional factors that suggest the cause of action arises from the defendant's contacts with New Hampshire. The plaintiff's action in assumpsit arises from the personal guaranty agreement that the defendant signed with the New Hampshire plaintiff. The plaintiff argues the damages in the suit are those arising, in part, from payments sent from New Hampshire to Watson's employees in New York. Time

sheets directing the amount to be distributed in payroll checks were sent to New Hampshire by Watson. The defendant personally received payroll checks during the period of the contract's administration. These New Hampshire contacts are related to the cause of action in this suit to recover for the unpaid portion of Watson's bills.

We turn to the second question: whether the defendant purposefully availed himself of the privilege of conducting business in New Hampshire. The defendant argues that the New Hampshire contacts were merely administrative in nature and put in place subsequent to the execution of the agreement. We disagree.

This is not a case arising from an isolated retail sale or a contract between a corporate giant and an individual with no ties to the business world. Rather, the defendant, the president of a contracting party, voluntarily entered into an agreement with a New Hampshire corporation providing for the administration of personnel located at Watson's New York job site. Further, to secure the contract, into which the plaintiff would not have entered otherwise, the defendant signed the personal guaranty agreement. We conclude that the defendant has personally availed himself of the laws of New Hampshire.

Finally, we review whether it is fair and reasonable to require the defendant to defend this suit in New Hampshire. Considering the various factors discussed above, we conclude that in this case, such a requirement is constitutionally permissible.

There is no undue or surprising burden on the defendant. The plaintiff sought assurances from the defendant to ensure Watson would be able to perform its obligations. Subsequently, the plaintiff entered into the personal guaranty agreement.

When Watson failed to reimburse the plaintiff for wages paid to employees pursuant to the agreement, it was foreseeable that its actions would harm the New Hampshire company with which it had chosen to do business. New Hampshire has a significant interest in providing remedies to its residents for a nonresident's breach of contract. See Computac, Inc. v. Dixie News Co., 124 N.H. 350, 355, 469 A.2d 1345, 1348 (1983).

Our conclusion does not change merely because the defendant has been sued in his personal capacity as the guarantor of the agreement. The personal guaranty executed by the defendant was "an absolute and unconditional guarantee of payment and of performance" under which the defendant "guarantee[d] fulfillment of [Watson's] obligations." See Telerent Leasing Corp. v. Equity Associates, 245 S.E.2d 229, 233 (N.C. Ct. App. 1978) (finding

jurisdiction because defendant's guaranty of a defaulting non-forum state corporation created sufficient minimum contact with the forum State where creditor plaintiff resided).

■ The agreement further provided that the plaintiff "would be unwilling to enter into or continue the Client Service Agreement without this Personal Guaranty." While it did not contain all of the same provisions concerning notices and the application of New Hampshire law, the guaranty was executed contemporaneously with the agreement by the defendant and thus should be interpreted with it. *See Bogosian*, 99 N.H. at 344, 111 A.2d at 193. This is particularly true where the guaranty specifically referred to the agreement whose performance it guaranteed. *See Rivier College v. St. Paul Fire Ins. Co.*, 104 N.H. 398, 401, 187 A.2d 799, 802 (1963).

■ It is fair and efficient to require nonresident guarantors to appear in our courts when they have an economic interest in the enterprise they were backing. *Cf. National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137-38 (6th Cir. 1982) (finding jurisdiction over non-forum state residents, wives of the principals of a defaulting forum state corporation, who guaranteed performance). As Watson's president, the defendant had an economic interest in the success of the underlying contract. Having executed both the agreement and the guaranty, the defendant had sufficient notice that a breach of the agreement could subject him to litigation in New Hampshire. He executed the personal guaranty to secure the benefit of the plaintiff's services for Watson.

While we cannot say that personal jurisdiction will attach to a guarantor in every case in which it attaches to the secured party, we conclude under the facts in this case that the choice of law, notice provisions, and defendant's economic interest in the underlying contracts, combined with his contemporaneous execution of his personal guaranty, provide the contacts and notice necessary to satisfy due process. *See Forsythe v. Overmyer*, 576 F.2d 779, 783-84 (9th Cir.), *cert. denied*, 439 U.S. 864 (1978); *Ameritrust Co. Nat. Ass'n v. Chanslor*, 803 F. Supp. 893, 895-96 (S.D.N.Y. 1992).

Accordingly, we hold that the United States Constitution and the laws of this State permit the New Hampshire courts to exercise *in personam* jurisdiction over the defendant.

*Reversed and remanded.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, con-

462

curred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.