Hillsborough-southern judicial district
No. 98-514

SKILLSOFT CORPORATION & a.

v.

HARCOURT GENERAL, INC. & a.

April 18, 2001

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Christopher Cole* and *Peter S. Cowan* on the brief, and *Mr. Cole* orally), for the plaintiffs.

*Kenna, Johnston & Sharkey, P.A.*, of Manchester (*Kevin E. Sharkey* on the brief), and *Ross & Hardies*, of Chicago, Illinois (*Richard E. Lieberman* and *Stephen B. Mead* on the brief, and *Mr. Lieberman* orally), for the defendants.

NADEAU, J. The defendants, Harcourt General, Inc. (Harcourt) and its subsidiary, National Education Training Group, Inc. (NET), appeal an order of the Superior Court (*Hampsey*, J.) denying their motion to dismiss for lack of specific personal jurisdiction. The plaintiffs in this declaratory judgment action are Skillsoft Corporation (Skillsoft), a New Hampshire corporation, and its officers, Charles E. Moran, a New Hampshire resident, and Mark Townsend, a resident of the Commonwealth of Massachusetts. We reverse.

The factual background follows. Harcourt is a Delaware corporation with its principal place of business in Chestnut Hill, Massachusetts. NET is a subsidiary of Harcourt, organized under the laws of the State of Nevada. Its principal place of business is in Naperville, Illinois.

Moran is president and chief executive officer (CEO) of Skillsoft. He is also the former president and CEO of NET. Townsend is Skillsoft's vice president of product development and former vice president for advanced technology at NET.

In early 1995, Moran began consulting for NET, and on May 12, 1995, he was offered employment with NET. During the course of employment negotiations, Moran made it clear that he would accept the position only if he could work one or two days a week from his home in Bedford, New Hampshire. Accordingly, NET shipped the necessary supplies and equipment for Moran to work at home, including a computer and a fax machine. The company also paid for Moran's weekly commute between New Hampshire and Illinois. During the course of his employment Moran regularly communicated with various NET employees via fax and telephone.

In May 1997, Harcourt acquired NET. This, however, did not affect Moran's working arrangement. Nevertheless, in June 1997, and again in October 1997, Moran informed Harcourt and NET representatives that he intended to resign and pursue other oppor-

tunities. On November 5, 1997, representatives of Harcourt faxed a standard severance agreement to Moran's home in New Hampshire for his review. It contained restrictive covenants against Moran divulging NET's "trade secrets or confidential or proprietary information," soliciting NET employees for eighteen months, and affiliating with two of NET's competitors. Moran refused to accept the severance agreement. The record does not contain any severance agreement ever agreed upon by the parties. In fact, the plaintiffs concede that any alleged restrictions on their business activities are "unsupported by . . . contract."

Following Moran's refusal to sign the proposed severance agreement, Harcourt's legal department sent a letter to Moran's California counsel indicating Harcourt's concerns regarding the possibility that Moran breached his corporate fiduciary duties and his obligations under the Illinois Trade Secrets Act. In a January 30, 1998 letter sent from Harcourt directly to Moran, Harcourt expressed additional concerns regarding Moran's fiduciary duties and the possibility of a continued employee exodus from NET orchestrated by Moran. Finally, in a March 11, 1998 letter from counsel to Moran, Harcourt indicated that the plaintiffs had violated Illinois law by, among other things, breaching fiduciary duties, stealing trade secrets, impermissibly competing with NET and inducing employees to leave NET for jobs with Skillsoft. This letter indicated that Harcourt was prepared to file a lawsuit against the plaintiffs.

On April 17, 1998, the plaintiffs filed a petition for declaratory judgment in superior court, seeking a declaration of their rights in connection with this dispute. On May 5, 1998, the defendants moved to dismiss for lack of personal jurisdiction. The court denied the defendants' motion, and this appeal followed.

"The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant." *Phelps v. Kingston*, 130 N.H. 166, 170 (1987). The plaintiff must offer affirmative proof to substantiate facts that relate to personal jurisdiction. *See Brother Records v. HarperCollins Publishers*, 141 N.H. 322, 324 (1996), *cert. denied*, 520 U.S. 1103 (1997). On May 15, 1998, the plaintiffs supplied numerous affidavits substantiating the facts above as well as other facts relative to the employment relationships involved. We look to those affidavits to determine if personal jurisdiction is appropriate.

Ordinarily, "[d]etermining whether a court may exercise personal jurisdiction over a defendant requires a two-part analysis. First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be

satisfied." *Staffing Network, Inc. v. Pietropaolo*, 145 N.H. 456, 457 (2000) (citation omitted). Here, however, the defendants do not dispute the applicability of the long-arm statute. Instead, they argue that the superior court's ruling violated the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. Thus, we focus only upon the constitutional question.

■ ■ "The federal Due Process Clause permits the exercise of personal jurisdiction over a defendant if the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation omitted). "Whether constitutionally adequate contacts exist depends on the relationship among the defendant, the forum, and the litigation." *Id.* (quotation omitted). While jurisdiction can be general or specific, the plaintiffs argue only that jurisdiction is specific, and we accordingly limit our inquiry. In determining whether sufficient minimum contacts for specific personal jurisdiction exist, we engage in a tripartite inquiry. We look to see if: (1) the contacts relate to the cause of action; (2) the defendants have purposefully availed themselves of the protections of New Hampshire law; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire. *See id.* at 458-59. While "[e]ach defendant's contacts with the forum state must be assessed individually," *Brother Records*, 141 N.H. at 325, in this case, where Harcourt is the parent company of NET, the defendants do not attempt to distinguish themselves for purposes of our inquiry. Because we conclude that the only relevant contacts are letters sent by Harcourt in its management of NET personnel, we will conduct only one inquiry.

■ First, we must determine if the contacts relate to the litigation; that is, the cause of action must arise from the defendants' contacts with New Hampshire. This "requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995).

The cause of action in this case is the plaintiffs' request for a declaration of their right to hire the defendants' employees and a finding that they have not breached any duty to defendants. Importantly, this is not a contract dispute, as a contract never existed between the parties relative to the alleged rights and duties here at issue. Therefore, the typical contacts that we look to relative

to contract formation do not aid our analysis in this case. *Cf. Staffing Network*, 145 N.H. at 458-61 (finding personal jurisdiction arose, in part, because of defendant's actions relative to contracting with a New Hampshire corporation).

We agree with the superior court that "the facts that gave rise to this action are [the plaintiffs'] business practices and the letters sent by the defendants to Moran questioning the propriety of those practices." It is axiomatic, however, that the *plaintiffs'* business practices cannot contribute to the *defendants'* contacts with New Hampshire toward establishing personal jurisdiction. The plaintiffs argue that we should focus upon numerous contacts between the defendants and New Hampshire relative to Moran and Townsend's employment history. We disagree. We "consider the contacts between the defendants and the forum state viewed through the prism of the plaintiffs'" particular suit. *Sawtelle*, 70 F.3d at 1389. We conclude that the contacts relative to Moran and Townsend's employment establish only a "general relationship" between the parties, and are irrelevant to the specific personal jurisdiction inquiry at issue here. In order for us to find personal jurisdiction, we must look only to the defendants' contacts that relate to this litigation. Therefore, we focus upon the three letters sent by the defendants to the plaintiffs in New Hampshire.

The letters set forth the grounds for the defendants' Illinois law suit. Specifically, the letters allege violations of the plaintiffs' common law duty of loyalty pertaining to corporate officers and the Illinois Trade Secrets Act. The plaintiffs conceded at oral argument that the purpose of their declaratory judgment action is to "seek a clean bill of health" relative to the claims made in the letters. As the defendants' letters created the impetus to file this lawsuit, they clearly relate to the litigation at hand.

We turn to the second part of our inquiry, namely, whether the defendants purposefully availed themselves of the laws and protections of New Hampshire. Often, this inquiry focuses upon whether "the defendant has 'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). The foreseeable consequences of the defendants' letters in this case were not injuries, but rather the resolution of a potential legal dispute.

The letters indicate that the defendants intended to avail themselves of the laws of the State of Illinois. The letters were designed to inform the plaintiffs that their actions violated the laws

of another State. In the context of intellectual property infringement letters sent to alleged violators, the federal courts "have consistently held that the sending of a cease and desist letter in patent or copyright infringement cases is alone insufficient to establish the minimum contacts necessary for specific personal jurisdiction." *Database America v. Bellsouth Advertising & Pub.*, 825 F. Supp. 1195, 1213 (D.N.J. 1993). The letters in this case are analogous to patent infringement letters in that their purpose was to demand that the plaintiffs cease the alleged violations. We conclude that the defendants did not purposefully avail themselves of the protections of New Hampshire law.

■ Finally, we inquire into the fairness and reasonableness in requiring the defendants to defend this suit in New Hampshire. We balance the following factors:

the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Phelps*, 130 N.H. at 172 (quotations omitted).

■ Even assuming that forcing out-of-state litigation upon the defendants, part of a large multi-state corporate conglomerate, would not likely be burdensome, the other factors in this balancing test significantly outweigh that conclusion. The plaintiffs' interest in obtaining "relief" in this particular suit is weak. The plaintiffs do not seek any damages, and a declaration of their rights in New Hampshire would not necessarily thwart impending litigation in Illinois.

In this case, the defendants attempted to settle their legal disputes by sending cease and desist letters rather than immediately filing a lawsuit. Subjecting defendants such as these to pre-emptive strikes, where their contacts with New Hampshire are so few and only marginally related to the litigation at hand, does not further the interstate judicial system's interest in obtaining the most efficient resolution of controversies. For the foregoing reasons, we find that the superior court cannot, in accordance with the

Federal Constitution, exercise personal jurisdiction over the defendants.

*Reversed.*

DALIANIS and DUGGAN, JJ., concurred; SMITH and HOLLMAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.