Coos
No. 2006-144

VERMONT WHOLESALE BUILDING PRODUCTS, INC.

v.

J.W. JONES LUMBER COMPANY, INC.

Argued: October 18, 2006
Opinion Issued: December 21, 2006

*Desmarais, Ewing & Johnston, P.L.L.C.*, of Manchester (*Brett J. Harpster* on the brief and orally), for the plaintiff.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, J.W. Jones Lumber Company, Inc. (Jones Lumber), appeals an order of the Superior Court (*Vaughan*, J.) denying its motion to dismiss for lack of personal jurisdiction. We vacate and remand.

The issue presented is whether awareness by a nonresident manufacturer that its product was sold to a distributor in Vermont and would reach New Hampshire in the stream of commerce constitutes "minimum contacts" such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

The following facts appear in the record. Jones Lumber is a North Carolina corporation that manufactures and sells lumber products. The plaintiff, Vermont Wholesale Building Products, Inc. (Vermont Wholesale), purchases specialty lumber and distributes it in four states: Massachusetts, New Hampshire, Vermont and New York. Vermont Wholesale purchased flooring from Jones Lumber and then sold it to Central Building Supply (Central), a retail store located in Littleton, New Hampshire. Central sold the flooring to Mark Yourison, a contractor, who installed it in Michelle and Walter Westberry's home, located in Whitefield, New Hampshire.

Jones Lumber's sole place of business is North Carolina. It is not registered to do business in New Hampshire, does not have an agent registered in New Hampshire, does not maintain any offices in New Hampshire and does not own any assets in New Hampshire. It neither employs agents in New Hampshire, nor deals directly with any distributors located in New Hampshire, nor advertises or in any way solicits business in New Hampshire. However, at the time Jones Lumber sold the flooring to Vermont Wholesale, it was aware that Vermont Wholesale sold flooring to businesses in the four-state region, which included New Hampshire.

This case began when the Westberrys brought suit against the contractor alleging that the flooring was defective. The contractor brought a third party action against Vermont Wholesale, who in turn brought actions against Central and Jones Lumber. Jones Lumber moved to dismiss for lack of personal jurisdiction. Its motion was denied and this appeal followed.

In ruling on a motion to dismiss, all facts properly pleaded by the plaintiff are deemed true, and all reasonable inferences derived therefrom are construed most favorably to the plaintiff. *Weld Power Industries v. C.S.I. Technologies*, 124 N.H. 121, 123 (1983). We review a trial court's

ruling on a motion to dismiss for lack of personal jurisdiction *de novo*. *Lyme Timber Co. v. DSF Investors*, 150 N.H. 557, 559 (2004). When jurisdictional facts are challenged, the plaintiff need make only a *prima facie* showing of such facts to defeat the defendant's motion to dismiss. *See Brother Records v. HarperCollins Publishers*, 141 N.H. 322, 324-25 (1996), *cert. denied*, 520 U.S. 1103 (1997). The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant. *Id.* at 324.

■ In determining whether the plaintiff has met its burden, we generally engage in a two-part inquiry. *Staffing Network, Inc. v. Pietropaolo*, 145 N.H. 456, 457 (2000). "First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." *Id.* (citation omitted). Because we construe the State's long-arm statute as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause, *see Alacron v. Swanson*, 145 N.H. 625, 628 (2000), our primary analysis relates to due process. *See Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 215 (D.N.H. 2000). Pursuant to the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant if the defendant has minimum contacts with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Alacron*, 145 N.H. at 628.

■ Personal jurisdiction can either be general or specific. *Staffing Network*, 145 N.H. at 458. As the First Circuit Court of Appeals has explained, "[G]eneral jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (quotation omitted), *cert. denied*, 514 U.S. 1108 (1995). On the other hand, specific jurisdiction is "narrower in scope," *id.*, and may only be relied upon "where the cause of action arises out of or relates to the defendant's forum-based contacts." *Staffing Network*, 145 N.H. at 458 (quotation omitted). Both parties' arguments focus upon whether New Hampshire has specific jurisdiction over Jones Lumber. Accordingly, our analysis focuses exclusively on specific jurisdiction.

■ In determining whether the exercise of specific personal jurisdiction comports with due process, we examine whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed itself of the protection of New Hampshire's laws; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire.

*Skillsoft Corp. v. Harcourt General,* 146 N.H. 305, 308 (2001). All three factors must be satisfied in order for the exercise of jurisdiction to be constitutional, *Dagesse,* 113 F. Supp. 2d at 216, and each factor must be evaluated on a case-by-case basis. *Phelps v. Kingston,* 130 N.H. 166, 171 (1987).

█ If the plaintiff meets its burden of proof as to the first two factors, we then consider the third. *See id.* at 172. In examining the third factor, that is, whether it would be fair and reasonable to require the defendant to defend the suit in this State, we look to the so-called "gestalt factors," which consider:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quotations omitted) These factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* (quotation omitted).

█ Because there appears to be no dispute in this case that the alleged contacts relate to the cause of action, we proceed directly to the second factor and consider whether the defendant purposefully availed itself of the protection of New Hampshire's laws. When making this determination, courts traditionally inquire whether the defendant has established minimum contacts with the forum state.

> Minimum contacts "must have a basis in some act by which the defendant purposefully avails [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws .... Jurisdiction is proper where the contacts proximately result from actions by the defendant [itself] that create a substantial connection with the forum State."

*Metcalf v. Lawson,* 148 N.H. 35, 38 (2002) (quoting *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 109 (1987) (O'Connor, J., plurality opinion)). "The focus of this inquiry, therefore, is not merely whether ... the defendant['s] contacts might have caused injury in New Hampshire, but whether these contacts should have given [the] defendant notice that ... [it] should reasonably have anticipated being haled into court in this State." *Alacron,* 145 N.H. at 628. Often this inquiry focuses upon whether

the defendant has purposefully directed its activities at residents of the forum. *Skillsoft Corp.*, 146 N.H. at 309.

In the present case, Vermont Wholesale argues that Jones Lumber established minimum contacts with New Hampshire and purposely availed itself of New Hampshire's laws by placing its product into the stream of commerce. Specifically, Vermont Wholesale argues that Jones Lumber sold its flooring to Vermont Wholesale with the knowledge that it would be distributed to a four-state region that includes New Hampshire, thus placing its product into the stream of commerce and conferring jurisdiction upon New Hampshire courts. Jones Lumber maintains that merely placing its product into the stream of commerce coupled with the foreseeability of its product being used in New Hampshire, without a further showing of activity directed towards the State, is not enough to establish minimum contacts for the purpose of satisfying the Due Process Clause.

Whether a plaintiff can satisfy the second prong of the specific jurisdiction test by showing that a defendant placed its product into the stream of commerce is an issue of first impression in New Hampshire. The issue has resulted in divided opinions by the United States Supreme Court and a variety of responses from state and federal courts.

The closest we have come to dealing with this issue was *Brother Records*. In *Brother Records*, several defendants participated in either the creation or nationwide distribution of a book. *Brother Records*, 141 N.H. at 327. The plaintiffs sued defendants alleging libel and related torts based on the contents of the book. *Id.* at 323. Three defendants moved to dismiss for lack of personal jurisdiction arguing, in part, that they lacked sufficient contacts with New Hampshire because their actions were not purposefully directed at New Hampshire. *Id.* We affirmed the trial court's denial of the defendants' motions because of their involvement in writing the book and their intent to market and sell the book nationwide. *Id.* at 329. Our decision was based partially on the fact that one defendant had agreed to participate in a nationwide promotional tour, including television appearances, and each defendant signed an agreement explaining that the book would be distributed throughout the United States "through normal retail channels," *id.* at 326, and, thus, the defendants had "deliberately exploited the New Hampshire market." *Id.* at 327-28. However, in *Brother Records* we did not directly address the stream of commerce theory.

Two decisions from the United States Supreme Court are the focal point for the stream of commerce cases. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court was asked to decide whether an Oklahoma court could exercise personal jurisdiction over nonresident defendants in a products-liability action when the defendants'

only contact with Oklahoma was through the sale of an automobile to a nonresident consumer in New York who drove the automobile to Oklahoma. *Id.* at 288-89. In that case, a New York corporation distributed automobiles to a retail dealer also located in New York. *Id.* The plaintiffs, New York residents, purchased an automobile from the retail dealer. *Id.* While driving the automobile through Oklahoma, the plaintiffs were struck by another automobile resulting in a fire that injured the plaintiffs. *Id.* The plaintiffs brought a products-liability action in Oklahoma against the New York dealer and distributor alleging that the fire, and resulting injuries, were caused by the automobile's defective design. *Id.* The Court found no "efforts [by the defendants] to serve, directly or indirectly, the market for its product in [the forum state]," *id.* at 297, and held that the defendants could not be subjected to personal jurisdiction where the alleged contacts were based on the unilateral act of the *consumer* and not on any act by the defendants themselves. *Id.* at 298.

The plaintiffs in *World-Wide Volkswagen* argued that "because an automobile is mobile by its very design and purpose it was 'foreseeable' that the [automobile] would cause injury in Oklahoma." *Id.* at 295. In response, the Court held that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* The Court, however, noted that foreseeability is not "wholly irrelevant," and explained that the plaintiffs had misunderstood the foreseeability inquiry:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297. We interpret this statement to mean that foreseeability is only relevant to the extent that a state may exercise jurisdiction over a defendant that could reasonably foresee being haled into a forum state because of *its* conduct and connections with that state. Or, as the Court later explained, because of the defendant's "efforts . . . to serve, directly or indirectly, the market for its product in other States." *Id.*

Despite holding that "the mere likelihood that a product will find its way into the forum State" is not critical to the due process analysis, the Court went on to hold that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98. These arguably conflicting statements left open the

question as to precisely what form of contacts would constitute an "expectation" that products would be purchased in a forum state. While the Court clearly held that jurisdiction over a defendant could not be based upon the foreseeable unilateral actions of a consumer, it was not clear as to when a defendant's act of placing a product into the stream of commerce that foreseeably could end up in another state would satisfy the minimum contacts required by the Due Process Clause.

Lower courts' interpretations of *World-Wide Volkswagen* differ. As Justice O'Connor later explained in *Asahi*:

> Some courts ... understood the Due Process Clause, as interpreted in *World-Wide Volkswagen*, to allow an exercise of personal jurisdiction to be based on no more than the defendant's act of placing the product in the stream of commerce. Other courts ... understood ... *World-Wide Volkswagen* to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.

*Asahi*, 480 U.S. at 110 (O'Connor, J., plurality opinion).

*Asahi* presented the Supreme Court with an opportunity to clarify the stream of commerce issue. There, the specific issue was whether California could exercise personal jurisdiction over Asahi Metal Industry Co. (Asahi), a Japanese corporation, in a product-liability case. *Id.* at 105-06. Asahi manufactured and sold tire valve assemblies to a tire manufacturer in Taiwan. *Id.* at 106. The tire manufacturer used the assemblies in its tires, which were sold to retail stores throughout the United States, including California. *Id.* The plaintiff in that case alleged that the assemblies were defective and caused his motorcycle tire to explode resulting in an accident on a California highway. *Id.*

*Asahi* resulted in a divided court which did not resolve the confusion created by *World-Wide Volkswagen*. Instead, the court disposed of the case based upon the third factor of the specific personal jurisdiction test. Eight justices agreed that exercising personal jurisdiction over Asahi would be "unreasonable and unfair" and, thus, there was no personal jurisdiction because the third factor of the test was not satisfied. *Id.* at 116. The Court explained that there are "unique burdens placed upon one who must defend oneself in a foreign legal system" and that "the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi are slight [because a]ll that remains is a claim for indemnification asserted by ... a Taiwanese corporation ...." *Id.* at 114.

With respect to the second factor, that is, whether Asahi's mere awareness that its product would reach California through the stream of

commerce constituted minimum contacts for purposes of the due process analysis, the Court was unable to reach a majority decision.

Writing for four justices, Justice O'Connor found that Asahi had not established minimum contacts with California, reasoning that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112 (O'Connor, J., plurality opinion). She further explained:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* Her view is commonly referred to as the "stream of commerce plus" theory.

Justice Brennan, also writing for four justices, rejected Justice O'Connor's notion that "additional conduct directed toward the forum" is needed to exercise personal jurisdiction over a defendant. *Id.* at 117 (Brennan, J., concurring in part and concurring in the judgment) (quotations and brackets omitted). Instead, he concluded that "[a]s long as a [defendant] is aware that [its] product is being marketed in the forum State," it has purposefully availed itself of that state's market. *Id.* Justice Brennan reasoned:

> A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.*

Justice Stevens disagreed with both opinions, stating that "[w]hether [a defendant's] conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and

the hazardous character of the components." *Id.* at 122 (Stevens, J., concurring in part and concurring in the judgment).

Since *Asahi*, the federal circuit courts remain divided. As summarized by one commentator:

> [Some] federal circuit courts of appeals have embraced the additional conduct analysis espoused by Justice O'Connor in *Asahi*. [Some] federal circuits have adopted the broader stream of commerce theory advocated by Justice Brennan. The majority of the circuits ... have declined to adopt either *Asahi* analysis; instead they have continued to apply only the Court's earlier *World-Wide Volkswagen* analysis.

Porterfield, *Which Stream To Follow*, 20 GA. ST. U.L. REV. 539, 551 (2003); *see also* Baker, *Product Liability Suits and the Stream of Commerce After Asahi*, 35 TULSA L.J. 705 (2000) (explaining views of each circuit in turn).

In considering this issue, we reiterate that *World-Wide Volkswagen* held that "*foreseeability alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295 (quotations omitted, emphasis added). The Court reasoned:

> If foreseeability were the criterion, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there, a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey, or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there. Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel.

*Id.* at 296 (citations omitted). In light of this language, we interpret *World-Wide Volkswagen* to require "something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant." *Asahi*, 480 U.S. at 111 (O'Connor, J., plurality opinion).

Accordingly, we decline to adopt Justice Brennan's view that a state may exercise jurisdiction over a defendant "[a]s long as [the defendant] is aware that [its] product is being marketed in the forum State." *Id.* at 117. This broad approach to personal jurisdiction also suggests that "'foreseeability' alone [is] a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295.

We find Justice O'Connor's "stream of commerce plus" theory more consistent with *World-Wide Volkswagen*. In reading the Court's discussion of "foreseeability" as a whole, we interpret *World-Wide Volkswagen* to suggest that a defendant's "expectation" that its product will be purchased by a consumer in another state, as well as its "foreseeability" that it will be haled into another state to defend itself, are based upon "the defendant's conduct and connection with the forum State," or its "efforts . . . to serve, directly or indirectly, the market for its product in other States." *Id.* at 297. Thus, while *World-Wide Volkswagen* does not elaborate as to what type of contacts are necessary to satisfy due process, it appears to require "something more" than merely placing a product into the stream of commerce.

We also find that the "stream of commerce plus" theory best meets the requirements of the Due Process Clause because the stream of commerce rationale alone is too broad for due process limitations.

> The concept of minimum contacts . . . perform[s] two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World-Wide Volkswagen*, 444 U.S. at 291-92. Subjecting defendants to personal jurisdiction based upon the mere foreseeability that their products will end up in any given state through the stream of commerce leaves virtually no limitations upon a state's jurisdictional powers.

As noted in *World-Wide Volkswagen*, the Due Process Clause provides "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. The Court explained:

> When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.

*Id.* (citation and quotations omitted). We fear that the stream of commerce rationale alone would "subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the

defendant, making it impossible for defendants to plan and structure their business contacts and risks." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994), *cert. denied,* 513 U.S. 1151 (1995). In contrast, under the "stream of commerce plus" theory, a defendant can with more certainty predict whether a state may exercise jurisdiction if it engages in "[a]dditional conduct ... indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112 (O'Connor, J., plurality opinion).

The test enumerated by Justice O'Connor also provides courts a greater ability and more practical approach to evaluate a defendant's contacts than does the broader stream of commerce approach. We assume that Justice Brennan's approach, which would exercise jurisdiction over a defendant who is aware that its product will likely reach the forum state, would at least require actual knowledge on the part of the defendant. *See Asahi*, 480 U.S. at 117. To base minimum contacts on a lesser standard would invoke the "travel with the chattel" test expressly rejected by *World-Wide Volkswagen. See World-Wide Volkswagen*, 444 U.S. at 296.

Actual knowledge, especially when dealing with a commercial setting, may be difficult to determine. It may not be obvious whose knowledge—which corporate officer's—is determinative. Also, important evidence may be located in distant jurisdictions and, therefore, difficult to obtain. *See* Moe, *Asahi Metal Industry Co. v. Superior Court: The Stream of Commerce Doctrine, Barely Alive But Still Kicking*, 76 GEO. L.J. 203, 224 (1987).

In addition, a requirement of actual knowledge creates "a potential jurisdictional loophole [for] a defendant who willfully or negligently ignores the destination of its products." *Id.* This loophole is closed by a test which focuses more on the conduct of the defendant.

█ Bearing in mind these principles, we turn to the parties' arguments. Vermont Wholesale argues that Jones Lumber's "foreseeability" that its product would likely reach New Hampshire satisfies the "plus" required by the stream of commerce plus theory. This argument, however, confuses the stream of commerce theories discussed above. Justice Brennan's broader stream of commerce theory would allow a state to exercise jurisdiction over a defendant that was aware that its products would reach the forum state. However, the stream of commerce plus theory expressly rejects such an argument. Therefore, when the stream of commerce plus theory is applied, the defendant's awareness that its product may or will reach the forum state is not sufficient to establish that the defendant purposefully availed itself of the protection of that state's laws.

In this case, it appears that the trial court applied the stream of commerce rationale alone and did not require additional conduct on the part of Jones Lumber but, instead, based its finding of personal jurisdiction upon Jones Lumber's awareness that its product would likely reach New Hampshire. Accordingly, we vacate the trial court's ruling denying Jones Lumber's motion to dismiss and remand for further proceedings in accordance with this opinion. Upon remand, the trial court should apply the stream of commerce plus analysis to determine in the first instance whether Jones Lumber purposefully availed itself of the protection of New Hampshire's laws.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.