NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

10th Circuit Court-Hampton Family Division
Case No. 2023-0678
Citation: In the Matter of Penichet and Corroon, 2025 N.H. 8

IN THE MATTER OF MARIA CRISTINA JARERO PENICHET AND KENNETH CORROON

Argued: September 10, 2024
Opinion Issued: February 7, 2025

McLane Middleton, P.A., of Manchester (Peter D. Anderson on the brief and orally, and Jacqueline A. Leary on the brief), for the petitioner.

Shaheen & Gordon, P.A., of Concord (Tracey Goyette Cote on the brief and orally), for the respondent.

COUNTWAY, J.

[¶1] The petitioner, Maria Cristina Jarero Penichet (mother), appeals orders of the Circuit Court (Pendleton, J.) granting the motion of the respondent, Kenneth Corroon (father), to deny registration of a foreign child support order pursuant to the Uniform Interstate Family Support Act (UIFSA), see RSA ch. 546-B (2021), after concluding that a Mexico court did not have personal jurisdiction over the father, and denying the mother's request to reopen the record. We affirm.

I.  Background

[¶2] The following facts are drawn from the circuit court's orders and the record. The mother and the father are unmarried parents. They have one minor child, who was born in New York in 2016.

[¶3] After the child was born, the parties executed a Stipulation of Paternity, Custody and Access (the stipulation) in New York. The stipulation gave the mother sole legal and physical custody of the child and gave her the right to relocate anywhere with the child, including her native home of Mexico. It required the parties to cooperate in registering the child and obtaining the child's Mexican and American citizenships and passports, and also required the father to provide documents and information to the mother when requested. When the parties executed the stipulation, the mother was living in New York and the father was living in New Hampshire.

[¶4] The mother and the child moved to Mexico in September 2016. Around that time, the father started to provide monthly child support, which increased between then and 2019. The father never lived in Mexico with the child or while providing support for the child. He does not own property or do business in Mexico. The father has not been to Mexico since he attended the child's baptism in 2017.

[¶5] The mother filed an ex parte petition in Mexico City requesting child support from the father. In October 2022, the Mexico court entered a temporary order of support (the "Mexico order") and then summoned the father. Prior to the Mexico order, there was no child support order between the parties. The mother then filed a request to register foreign order in New Hampshire, requesting the registration and enforcement of the Mexico order. The father filed a motion to contest validity of registered foreign child support order, and a hearing was held in July 2023.

[¶6] Following the hearing, the circuit court granted the father's motion to deny registration. It found that the father does not have minimum contacts sufficient to justify the Mexico court's exercise of personal jurisdiction. The circuit court issued temporary orders to protect the interests of the minor child. The mother filed a motion for reconsideration, to which the father objected. The mother advanced new facts to support her allegation that Mexico had personal jurisdiction over the father. The father also offered new facts to rebut the mother's factual assertions but argued that the court should not reopen the record to consider the new facts.

[¶7] The circuit court declined to reopen the record, and in the alternative, concluded that the additional facts asserted by the mother did not support a finding that the Mexico court had personal jurisdiction over the father. The trial

2

court also denied the mother's motion to reconsider.  The mother appealed to this court.

## II.  Analysis

[¶8] Resolving the issues in this appeal requires us to interpret UIFSA.  Our review of the circuit court's interpretation of UIFSA is de novo.  In the Matter of Ball & Ball, 168 N.H. 133, 137 (2015).  "UIFSA is a model act adopted by the National Conference of Commissioners on Uniform State Laws at the behest of Congress."  In the Matter of Scott & Pierce, 160 N.H. 354, 358 (2010) (quotation omitted).  Codified in New Hampshire as RSA chapter 546-B (2021), UIFSA "governs the procedure for establishing, enforcing, and modifying child and spousal support orders and for determining parentage when more than one state is involved in these proceedings."  Id. (quotation omitted).

[¶9] To interpret UIFSA, we rely upon our ordinary rules of statutory construction.  Ball, 168 N.H. at 137.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.

[¶10] We also rely upon the official comments to UIFSA, later amendments to UIFSA when they provide insight into the intended meaning of New Hampshire's existing statute, and the interpretation of UIFSA by other jurisdictions.  Id.; see RSA 546-B:56 (providing that "consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it").  "When interpreting a uniform law, such as UIFSA, the intention of the drafters of a uniform act becomes the legislative intent upon enactment."  Ball, 168 N.H. at 137 (quotation omitted).

[¶11] New Hampshire courts generally "recognize and enforce . . .  a registered support order if the issuing tribunal had jurisdiction."  RSA 546-B:41, III.  RSA 546-B:45, I, provides that "[a] party contesting the validity or enforcement of a registered support order or seeking to vacate the registration has the burden of proving" one or more of the defenses enumerated in the statute, including, inter alia, that "[t]he issuing tribunal lacked personal jurisdiction over the contesting party."  RSA 546-B:45, I(a).  Here, the father objected to the mother's registration of the Mexico order, in part, on the basis that Mexico lacked personal jurisdiction over him.  The trial court agreed with the father after concluding that the father did not have sufficient minimum contacts with Mexico to justify the Mexico court's exercise of personal jurisdiction over him.  The mother asserts that RSA 546-B:3 does not apply in this case, that the trial court erred in shifting the burden of proving that the Mexico court had personal jurisdiction over the father to her, and that the trial court erred as a

matter of law when it determined that Mexico lacked personal jurisdiction over the father. We disagree.

[¶12] We begin with RSA 546-B:3, which enumerates eight grounds for establishing jurisdiction over a nonresident party in relation to child support and paternity claims. RSA 546-B:3, I, states:

> In a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> a. The individual is personally served with notice within this state;
> b. The individual submits to the jurisdiction of this state by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
> c. The individual resided with the child in this state;
> d. The individual resided in this state and provided prenatal expenses or support for the child;
> e. The child resides in this state as a result of the acts or directives of the individual;
> f. The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
> g. The individual asserted parentage of a child in the putative father registry maintained in this state by the department of health and human services; or
> h. There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

[¶13] We disagree with the mother that RSA 546-B:3 has no relevance in this case because it addresses jurisdiction in New Hampshire over "non-residents" only. RSA 546-B:3 is identical to Section 201 of the model act. See Unif. Interstate Family Support Act § 201 (2008), 9-1B U.L.A. 273, 290 (2019). The official comment following Section 201 of UIFSA provides insight into the intended meaning of the New Hampshire statute in the circumstances presented by this case. It states:

> [U]nder certain fact situations involving a request to recognize and enforce or modify a foreign support order, a state tribunal may be called upon to determine the applicability of long-arm jurisdiction under UIFSA to the facts of the case in order to decide the

4

enforceability of the foreign support order. . . . [A] state tribunal may be called upon to determine whether the facts underlying the support order would have provided the issuing foreign tribunal with personal jurisdiction over the respondent under the standards of this section. In effect, the question is whether the foreign tribunal would have been able to exercise jurisdiction in accordance with Section 201.

Comment to Unif. Interstate Family Support Act (2008) § 201, id. at 290. Accordingly, we conclude that RSA 546-B:3 required the trial court to determine whether the facts underlying the Mexico order would have provided Mexico with personal jurisdiction over the father in accordance with RSA 546-B:3. See Ball, 168 N.H. at 137.

[¶14] RSA 546-B:3, I(h) is a catch-all provision that permits a forum state to exercise personal jurisdiction over a nonresident party "to the full extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution," and the State Constitution. Pahnke v. Pahnke, 88 A.3d 432, 440 (Vt. 2014); see Hilyard v. Johnston, 992 N.W.2d 287, 288 (Mich. 2023). The father does not argue that the Mexico court's exercise of personal jurisdiction violates the New Hampshire State Constitution. Accordingly, we turn to whether the requirements of the federal Due Process Clause are satisfied.

[¶15] While a plaintiff or petitioner typically bears the burden of demonstrating facts sufficient to establish personal jurisdiction, see Staffing Network v. Pietropaolo, 145 N.H. 456, 457 (2000), UIFSA places the burden of proof on the party contesting the validity or enforcement of a registered support order. See RSA 546-B:45, I. Accordingly, the father in this case bore the burden of demonstrating that the Mexico court lacked personal jurisdiction over him. The mother asserts that the trial court ruled that the father had met his burden and "at the same time shifted the burden to [the mother]." We disagree. The trial court order states that "the [father] established he has no minim[um] contacts with Mexico." The trial court's subsequent statement that the mother "did not establish[] that the [father] has minim[um] contact sufficient to justify a Foreign Country's exercise of personal jurisdiction" makes clear that the trial court concluded, not that the mother failed to carry the initial burden, but, rather, that the father had made a prima facie case that he did not have sufficient minimum contacts with Mexico, and that the mother failed to rebut the prima facie case. Having concluded that the trial court did not impermissibly shift the burden of proof to the mother, we now consider whether the trial court erred as a matter of law when it determined that Mexico lacked personal jurisdiction over the father.

[¶16] As we have explained in the context of civil lawsuits, "[p]ursuant to the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant if the defendant has minimum contacts with the forum,

5

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co., 154 N.H. 625, 628 (2006) (quotation omitted). "Personal jurisdiction can be 'general,' where the defendant's contacts with the forum State are continuous and systematic, or 'specific,' where the cause of action arises out of or relates to the defendant's forum-based contacts." Fellows v. Colburn, 162 N.H. 685, 691 (2011) (quotation omitted). Only specific jurisdiction is at issue here.

[¶17] Whether sufficient minimum contacts for specific personal jurisdiction exist involves a tripartite inquiry. See Skillsoft Corp. v. Harcourt General, 146 N.H. 305, 308 (2001). We analyze whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed himself of the protections of the forum state's law; and (3) it would be fair and reasonable to require the defendant to defend the suit in the forum state. Id. All three factors must be satisfied for the exercise of jurisdiction to be constitutional. Red Oak Apartment Homes v. Holmes Carpet Ctr., 173 N.H. 529, 534 (2020). Because we conclude that the evidence presented at the July hearing demonstrated that the father did not purposefully avail himself of the laws and protections of Mexico, we need not consider whether prongs (1) and (3) have been satisfied. See Fellows, 162 N.H. at 696.

[¶18] For a defendant to be found to have purposefully availed himself of the laws and protections of the forum state, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Seward v. Richards, 174 N.H. 401, 412 (2021).

[¶19] Purposeful availment "requires both foreseeability and voluntariness." Id. Foreseeability requires that "the contacts must be of a nature such that a defendant could reasonably anticipate being haled into court" in the forum state. Id. (brackets omitted). Voluntariness requires that "a defendant's contacts with the forum state proximately result from actions by the defendant." Id. (brackets omitted). The contacts must be deliberate and cannot be based on the unilateral actions of another party or be merely fortuitous, but rather, the defendant must have purposefully directed actions at the forum state. Id.

[¶20] Applying the foregoing principles here, we conclude that the evidence the father presented at the circuit court hearing demonstrated that he did not purposefully direct actions at Mexico, and that his being haled into court in Mexico was not foreseeable. The child was conceived in New Hampshire, not in Mexico. Shortly after the child's birth in 2016, while the father was living in New Hampshire and the mother and child in New York, the parties entered into a stipulation. The stipulation gave the mother sole legal and physical custody of the child, and the right to relocate with the child, including to her native home of

6

Mexico. The stipulation also provided that the parties would cooperate in registering the child and obtaining the child's Mexican and American citizenship and passports, and that the father would provide documents and information to the mother when requested. Shortly after the parties entered into the stipulation, the mother and child relocated to Mexico. Although there was no child support order in place, the father began to make child support payments. While the father attended the child's baptism in Mexico, he has not traveled to Mexico since, and he does not own property or do business in Mexico.

[¶21] The mother argues that by executing a formal stipulation "providing for his son to live in Mexico, and having no child support agreement in place, [the father] should have anticipated a child support action being brought in Mexico, where his child and [the mother] live." We disagree.

[¶22] The United States Supreme Court has addressed purposeful availment in the child support context. See Kulko v. California Superior Court, 436 U.S. 84, 92-96 (1978). In Kulko, the parents' divorce decree incorporated terms of their separation agreement providing that the children would remain with their father in New York during the school year but would spend vacations with their mother, who had moved to California. Id. at 87. Their daughter then decided she wanted to live with her mother in California, which her father allowed. Id. at 87-88. Thereafter, the mother commenced an action in the California Superior Court seeking to modify the divorce decree. Id. at 88. The father moved to quash service of the summons, asserting that he had insufficient minimum contacts with California to warrant the assertion of personal jurisdiction over him. Id. The trial court denied the motion, and the California Supreme Court affirmed. Id. In an appeal from the decision denying the father's motion to quash, the United States Supreme Court stated that it could not "accept the proposition that [the father's] acquiescence in [the child's] desire to live with her mother conferred jurisdiction over [the father] in the California courts in [that] action." Id. at 94. The Court reasoned that "[a] father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have purposefully availed himself of the benefits and protections of California's laws." Id. (quotation omitted). Accordingly, a child's presence in a state will not, without more, confer personal jurisdiction over a nonresident parent in a child support matter. See id. at 93.

[¶23] The mother argues that Kulko is factually distinguishable from this case. The mother notes that the only contacts the father in Kulko had with California were that he married his former wife there, acquiesced to sending the child to California to live with the mother, and had two additional "transitory" contacts in California. By contrast, the mother argues, the father did more than acquiesce to his child relocating to Mexico, because he executed a stipulation that provides for his child to live in Mexico. The mother argues that these facts,

7

in addition to there being no existing child support order in place, support the conclusion that the father should have foreseen a child support action being brought in Mexico. We disagree.

[¶24] The stipulation gives the mother sole custody and permits her to live anywhere with the child, "including, but not limited to, Mexico." By signing the stipulation, the father merely acquiesced in the mother's decision to move with the child. This mere acquiescence does not confer jurisdiction over the father wherever the mother chooses to live. See Kulko, 436 U.S. at 94. We find the cases the mother cites in support of her argument inapposite. In each case, the court found that the nonresident parent or parents did not merely acquiesce to the child's presence in the state, but took affirmative action to establish the child's residence in the forum state. See In re Marriage of Highsmith, 488 N.E.2d 1000, 1002-04 (Ill. 1986); In re Parentage of W.J.B., 68 N.E.3d 977, 979-80, 985 (Ill. App. Ct. 2016); Daknis v. Burns, 719 N.Y.S.2d 134, 135 (N.Y. App. Div. 2000); Chautaqua County Dept. of Social Services ex. rel Colleen A.Y. v. Rita M.S., 943 N.Y.S.2d 332, 335-37 (N.Y. App. Div. 2012).

[¶25] Finally, while there is no child support agreement in place, the father has been paying child support since 2016. Cf. Daknis, 719 N.Y.S.2d at 135 (noting there was no mention of child support in the stipulation and thereafter petitioner paid no child support to the respondent, and concluding that the court had personal jurisdiction over the respondent). As the father has been paying child support for years, we do not find the lack of a child support agreement makes it foreseeable that he would be required to defend an action in Mexico.

[¶26] For all the above reasons, we hold that the trial court did not err when it concluded that the father did not have sufficient minimum contacts with Mexico to justify Mexico's exercise of personal jurisdiction over the father. We now consider whether the circuit court unsustainably exercised its discretion when it denied the mother's implicit request to reopen the record in her motion for reconsideration.

[¶27] We uphold a trial court's decision on a motion for reconsideration absent an unsustainable exercise of discretion. In the Matter of Geraghty & Geraghty, 169 N.H. 404, 419 (2016). A trial court's discretion likewise includes whether to reopen a matter. See Smith v. Shepard, 144 N.H. 262, 265 (1999). In its order on the mother's motion for reconsideration, the circuit court ruled that it was exercising "its discretion to deny the request to reopen the record," where the mother raised "factual allegations for the basis of personal jurisdiction over [the father] after the [c]ourt informed the parties that it found New Hampshire is the appropriate jurisdiction for the child support [p]roceeding."

[¶28] When a party raises an issue for the first time in its motion for reconsideration, the trial court has "the discretion to either not consider the issue

or re-open the record and allow the parties to present evidence." <u>Smith</u>, 144 N.H. at 265. Trial courts may refuse to reopen the record on the basis that no grounds are shown as to why the new information could not have been presented to the court at the original hearing. <u>See</u> <u>id</u>. (trial court did not unsustainably exercise its discretion when it refused to consider new documents because no reasons had been shown why the information could not have been presented to the court at the hearing). The mother offered no reason why the information contained in her post-trial and post-decision pleadings could not have been presented at the July hearing. The mother had notice that the father contested personal jurisdiction since February 2023. Upon this record, we cannot conclude that the circuit court unsustainably exercised its discretion by denying the motion for reconsideration, and by not reopening the record.

[¶29] The circuit court did not err in ruling that the father lacked sufficient minimum contacts in Mexico, and did not err in denying the mother's motion to reconsider and request to reopen the record. Accordingly, we affirm.

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.