Merrimack
No. 2010-302

RICHARD FELLOWS & a.

v.

ROBIN TENNANT COLBURN & a.

Argued: May 5, 2011
Opinion Issued: November 22, 2011

*Seufert Law Office, P.A.*, of Franklin (*Christopher J. Seufert* and *Lexie Rojas* on the brief, and *Mr. Seufert* orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Daniel E. Will* and *Jonathan M. Eck* on the brief, and *Mr. Will* orally), for the defendants.

HICKS, J. The defendants, Robin Tennant Colburn and Ronald and Richard Tennant, appeal an order of the Superior Court (*Sullivan*, J.) denying their motion to dismiss this action by the plaintiffs, Richard and Cheryl Fellows and Benjamin Bellerose, for negligence and violation of federal law for lack of personal jurisdiction. We reverse.

The trial court's order recites, or the record supports, the following facts. On December 14, 1981, the defendants' parents, Marvin and Thelma Tennant, and their sister, Barbara Tennant, purchased a residential property at 538 North State Street in Concord (the Concord property). On August 28, 1991, Marvin and Thelma executed the Tennant Family Trust (trust). They named themselves as co-trustees and Richard and Ronald Tennant as successor trustees. The beneficiaries included the defendants and Barbara. The trust was prepared by a Florida attorney, executed in Florida and listed Marvin and Thelma as residents of Florida.

In June 1992, Barbara quitclaimed her interest in the Concord property to Marvin and Thelma. On April 6, 1994, Marvin and Thelma conveyed the Concord property to the trust via warranty deed. The warranty deed was executed in Florida and notarized by a Florida notary. Thereafter, the deed was recorded in the Merrimack County Registry of Deeds.

On June 30, 1996, an order of abatement was issued to Marvin and Thelma by the New Hampshire Division of Public Health Services (DPHS), Childhood Lead Poisoning Prevention Program, ordering them to abate lead paint contamination at the Concord property. On May 22, 1998, DPHS sent a letter threatening to fine them because they had not complied with the abatement order. The letter further informed them that a sale of the property would not negate the order and that failure to notify a buyer would be a violation of state and federal law. On February 5, 2000, Marvin and Thelma, as trustees of the trust, sold the Concord property to Jesus and Eileen Guzman (the Guzmans), allegedly without notifying them of the lead paint abatement orders.

On November 22, 2000, Marvin and Thelma executed a restatement of trust agreement, amending and restating the trust. The restated trust was executed in Florida and named Marvin and Thelma as trustees and Richard Tennant and Robin as successor trustees. The beneficiaries included the defendants and Barbara. Robin resides in Illinois. Richard Tennant is a Florida resident, who spends six to seven months of the year in Florida and the remainder of the year in Massachusetts, and Ronald resides in Colorado.

On August 6, 2003, the Guzmans sold the Concord property to the plaintiffs. The Guzmans allegedly were unaware of the lead paint problem or the abatement orders and, thus, did not inform the plaintiffs of such at the time of sale.

Thelma passed away in June 2004. In July, Marvin resigned as trustee of the trust, and Richard Tennant and Robin became successor trustees. In April 2006, the final distribution was made from the trust to the defendants and Barbara.

In September 2009, the plaintiffs sued the defendants and Barbara, alleging a violation of federal law as well as negligence and/or intentional misrepresentation by the trust and Marvin and Thelma, as trustees. The plaintiffs claim that the defendants and Barbara, as successor trustees and beneficiaries of the trust, are liable for the actions of the trust and Marvin and Thelma, as former trustees. The defendants moved to dismiss, arguing that the court lacked personal jurisdiction over them.

On February 5, 2010, the trial court held a hearing at which the parties presented legal argument and offers of proof. Following the hearing, the court found that it had jurisdiction over the trust; over Robin and Richard,

as successor trustees "in their fiduciary capacity as representatives of the Trust[;]" and over all three defendants in their capacities as beneficiaries. Accordingly, the trial court granted the defendants' motion to the extent that the plaintiffs' writ could be read to assert any claim against them in their individual capacities and denied the motion in all other respects. This appeal followed.

The plaintiffs bear the burden of demonstrating facts sufficient to establish personal jurisdiction. *Lyme Timber Co. v. DSF Investors*, 150 N.H. 557, 559 (2004). Where, as here, neither party requested an evidentiary hearing on disputed jurisdictional facts, the plaintiffs had to make only a *prima facie* showing of jurisdictional facts to defeat the defendants' motion to dismiss. *Id.* Under the *prima facie* standard, the inquiry is whether the plaintiffs have "proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *State v. N. Atlantic Ref. Ltd.*, 160 N.H. 275, 280 (2010) (quotation omitted). The plaintiffs "ordinarily cannot rest upon the pleadings, but [are] obliged to adduce evidence of specific facts." *Id.* at 281 (quotation omitted).

Where a *prima facie* evidence standard is employed, we review a trial court's ruling on a motion to dismiss for lack of personal jurisdiction *de novo*. *Lyme Timber Co.*, 150 N.H. at 559. "[O]ur role in a *de novo* review, is not as a factfinder, but as a data collector. That is to say, the court must accept the plaintiff[s'] (properly documented) proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *N. Atlantic Ref. Ltd.*, 160 N.H. at 281 (quotation and ellipsis omitted). "[T]he court must construe the plaintiff[s'] evidentiary proffers in the light most congenial to the plaintiff[s'] jurisdictional claim." *Id.* (quotation omitted). Facts put forward by the defendants may be considered only if they are uncontradicted by the plaintiffs' submissions. *Id.*

To decide whether it may exercise *in personam* jurisdiction over a non-resident defendant, a court typically must engage in a two-part inquiry. *Phelps v. Kingston*, 130 N.H. 166, 170 (1987). "First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." *Skillsoft Corp. v. Harcourt General*, 146 N.H. 305, 307-08 (2001) (quotation omitted). Because we construe the State's long-arm statute as permitting the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause, our primary analysis relates to due process. *Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co.*, 154 N.H. 625, 628 (2006).

"Pursuant to the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant if the defendant has

minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation omitted); *see Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

> The concept of minimum contacts . . . can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).

■ Personal jurisdiction "can be 'general,' where the defendant's contacts with the forum State are continuous and systematic, or 'specific,' where the cause of action arises out of or relates to the defendant's forum-based contacts." *Staffing Network v. Pietropaolo*, 145 N.H. 456, 458 (2000) (quotations omitted). Here, the parties' arguments focus upon whether New Hampshire has specific jurisdiction over the defendants in their respective capacities as successor trustees and/or beneficiaries. Therefore, we review for specific personal jurisdiction only.

■ In determining whether the exercise of specific personal jurisdiction over a defendant comports with due process, we examine whether: (1) the contacts relate to the cause of action; (2) the defendant has purposefully availed itself of the protection of New Hampshire's laws; and (3) it would be fair and reasonable to require the defendant to defend the suit in New Hampshire. *Vt. Wholesale*, 154 N.H. at 628. Each factor must be evaluated on a case-by-case basis, and all three factors must be satisfied in order for the exercise of jurisdiction to be constitutional. *Lyme Timber Co.*, 150 N.H. at 560.

If the plaintiffs meet their burden as to the first two factors, we then consider the third. *Vt. Wholesale*, 154 N.H. at 629. In examining this factor, we look to the so-called "gestalt factors," which are:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quotation omitted).

The plaintiffs argue that we should focus on the trust's contacts with New Hampshire "in order to establish if the Defendant[s] in their capacity as successor trustees and beneficiaries should have reasonably anticipated that their voluntary acceptance of their roles would have subjected them to New Hampshire's jurisdiction." They maintain that all three defendants knew the trust owned and sold property in New Hampshire and, with this knowledge, Robin and Richard Tennant assumed the role of successor trustee, and all three defendants received trust assets as beneficiaries. Thus, the plaintiffs argue that it was reasonably foreseeable that the defendants could be called into court in New Hampshire and that by accepting distributions from the trust, the defendants purposely availed themselves of the benefits and protections of New Hampshire law. Finally, the plaintiffs contend that it would be fair and reasonable to subject the defendants to suit in New Hampshire because the injury, which concerns New Hampshire residents and property, occurred here, making New Hampshire the most convenient forum.

The defendants maintain that they have never had any contacts with New Hampshire related to this litigation; nor have they ever "purposefully and deliberately engaged in specific activities in New Hampshire that resulted in this litigation." They contend that, given their respective contacts with New Hampshire are so minimal and those contacts are unrelated to this litigation, requiring them to defend this action in New Hampshire "would be particularly burdensome and unfair."

■ Under RSA 564-B:8-811 (2007), "[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." Nonetheless, "[a] nonresident trustee may not be called upon to defend in an action involving the trust unless it has 'minimal contacts' with the state in which the suit is brought." 76 AM. JUR. 2D *Trusts* § 306 (2005); *see First American Bank of Va. v. Reilly*, 563 N.E.2d 142, 144 (Ind. Ct. App. 1990) ("Whether based upon the trustee's affiliation with the state through property ownership, or some other type of contact, all assertions of state-court jurisdiction must be evaluated according to the standards set forth in [*International Shoe Co.*] and its progeny." (citation omitted)). Furthermore, we are not aware of any authority, and the plaintiffs have not cited any, which allows suit against the beneficiary of a trust absent such minimal contacts. With this in mind, we turn to an analysis of whether the defendants have sufficient contacts with New Hampshire such that the maintenance of the present action against them as successor trustees and beneficiaries "does not offend traditional notions of fair play and substantial justice." *Internat. Shoe Co.*, 326 U.S. at 316 (quotation omitted).

First, we must determine if the defendants' contacts relate to the litigation; that is, the cause of action must arise from the defendants' contacts with New Hampshire. *Skillsoft Corp.*, 146 N.H. at 308. "[T]o be constitutionally significant, forum-state contacts need not involve physical presence." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 290 (1st Cir. 1999). "It is not the relationship itself, but the content of the parties' interactions that creates constitutionally significant contacts." *Id.* As a result, "[t]o satisfy the relatedness factor, there must be more than just an attenuated connection between the contacts and the claim; the defendant[s'] in-state conduct must form an important, or at least material, element of proof in the plaintiff[s'] case." *N. Atlantic Ref. Ltd.*, 160 N.H. at 282 (quotation and brackets omitted).

The suit in this case involves a claim for violation of federal law as well as a claim for negligent and/or intentional misrepresentation. These claims stem from the alleged failure of the trust, and Marvin and Thelma as trustees, to notify the Guzmans of the lead paint problem and abatement orders upon sale of the Concord property. It is this in-state conduct and not any conduct on the part of the defendants that forms the basis of this case. Indeed, the plaintiffs have not submitted any evidence to indicate that the successor trustees, Robin and Richard, were involved in the sale in any way. Further, at oral argument, the plaintiffs conceded there is no evidence that Robin and Richard ever knew about the lead paint problem or the abatement orders.

Admittedly, Robin and Richard accepted appointment as successor trustees of the trust. However, their agreement to act as successor trustees, over four years after the sale of the Concord property, without a showing of any prior involvement with the Concord property as it relates to this litigation or any active administration of the trust in New Hampshire "simply does not evince the kind of deliberate contact required of" them. *First American Bank of Va.*, 563 N.E.2d at 145 (footnote omitted) (trustee in declaratory judgment action by beneficiary not subject to jurisdiction in state where it transacted no business, had no offices, none of its agents appeared or acquiesced to jurisdiction, no trust assets were ever held or administered and the trust document was not created); *cf. Johnson v. Witkowski*, 573 N.E.2d 513, 523-24 (Mass. App. Ct. 1991) (trustee in action by beneficiary for breach of fiduciary duties subject to jurisdiction in state where trust formed and most of the beneficiaries resided and where trustee signed trust, managed and administered trust and maintained numerous contacts with the plaintiff). Similarly, the mere receipt by the defendants as trust beneficiaries of trust assets, over six years after the sale of the Concord property, without further contacts with this state or related to this

litigation, does not serve to establish the minimum contacts necessary for personal jurisdiction. *See Skillsoft Corp.*, 146 N.H. at 309 ("In order for us to find personal jurisdiction, we must look only to the defendants' contacts that relate to this litigation.").

Nor do the contacts of the trust and Marvin and Thelma, as the initial trustees, suffice to establish personal jurisdiction over the defendants. *Cf. Mosier v. Kinley*, 142 N.H. 415, 422 (1997) (defendant's status as a hospital staff member did not require that we analyze the hospital's own contacts with the forum). "Each defendant's contacts with the forum State must be assessed individually." *Id.* (quotation omitted). Here, any contacts the defendants had with New Hampshire prior to their designation as successor trustees and beneficiaries were unrelated to this litigation. Robin has not been to New Hampshire since 1987 and never had any involvement with the Concord property. Ronald has not been to New Hampshire in fifteen to twenty years and only visited his parents three to four times at the Concord property. Finally, Richard Tennant visited his parents at the Concord property every four to six weeks until they permanently moved to Florida in approximately 1999. He last visited New Hampshire in 2009 when he went to a baseball game in Manchester. None of these contacts relate to, or form the basis of, the plaintiffs' claims. *Cf. Skillsoft Corp.*, 146 N.H. at 309 (finding that the "defendants' letters [to the plaintiffs in New Hampshire] created the impetus to file" the lawsuit and, thus, "clearly relate[d] to the litigation").

With respect to the second part of our inquiry, we must consider whether the defendants purposely availed themselves of the protection of New Hampshire's laws. *See Vt. Wholesale*, 154 N.H. at 628. "[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *N. Atlantic Ref. Ltd.*, 160 N.H. at 283-84 (quotation omitted). Purposeful availment requires both foreseeability and voluntariness. *Id.* at 284. "Voluntariness requires that [each of] the defendant's contacts with the forum state proximately result from actions by the defendant *himself.*" *Id.* (quotation omitted). These "contacts must be deliberate, and not based on the unilateral actions of another party." *Id.* (quotation omitted). "Foreseeability requires that the contacts also must be of a nature that the defendant could reasonably anticipate being haled into court there." *Id.* (quotation omitted). This requirement ensures "the orderly administration of the laws," and, thus, "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assur-

ance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (quotation omitted).

In this case, it was Marvin and Thelma, as trustees, who sold the Concord property to the Guzmans allegedly without informing them of the lead paint problem and abatement orders. The defendants accepted their appointments as successor trustees after this event. "[T]o make a prima facie showing of purposeful availment, it is not enough to prove that a defendant agreed to act as the trustee of a trust." *Phillips Exeter Academy*, 196 F.3d at 292 (finding that purposeful availment inquiry is not satisfied by proof that a defendant agreed to act as trustee of trust that benefited a resident of the forum state). "Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship — say, by solicitation — the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Id.* (citation omitted); *see Rose v. Firstar Bank*, 819 A.2d 1247, 1255 (R.I. 2003) (nonresident trustee did not avail itself of the benefits of forum state's law "merely by agreeing to and continuing to serve as the trustee for th[e] trust after one of the trust's beneficiaries had moved her residence to" the forum state).

Likewise, it is not enough that the defendants eventually received assets from the trust as beneficiaries. "[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *World-Wide Volkswagen Corp.*, 444 U.S. at 299. The Concord property was sold on February 5, 2000 and there is no evidence that any trust assets remained in New Hampshire following the sale. The fact that the defendants may have eventually received distributions from the trust resulting from the sale of the property six years earlier "is far too attenuated a contact to justify" the exercise of personal jurisdiction over them in New Hampshire. *Id.*

Significantly, the events giving rise to this litigation occurred over four years before Robin and Richard accepted their appointments as successor trustees and six years before the final distribution of assets. As such, we find it was not foreseeable that the defendants "could reasonably anticipate being haled into court" here. *N. Atlantic Ref. Ltd.*, 160 N.H. at 284 (quotation omitted). This is not a case in which the defendants became involved in the trust after litigation commenced and, thus, it should have occurred to them that they would be subject to jurisdiction in New Hampshire. *Cf. Sullivan v. Kodsi*, 836 N.E.2d 125, 133 (Ill. App. Ct. 2005) (reasonably foreseeable that successor trustee would be haled into court in forum state where litigation had already commenced at time appointed as successor trustee).

■ The plaintiffs suggest that it was reasonably foreseeable that the defendants could be haled into court in New Hampshire because they have been named beneficiaries of the trust since its creation. However, "[a] trust can be created without notice to or acceptance by the beneficiary." 7 C. DeGrandpre, New Hampshire Practice, Wills, Trusts and Gifts § 28.05, at 360 (4th ed. 2003). Here, there is no evidence that the beneficiaries were aware of their beneficiary status prior to 2004 when Marvin resigned as trustee or prior to 2006 when they received their final distributions. Accordingly, we conclude that the defendants did not purposefully avail themselves of the protections of New Hampshire law.

■ In light of the above, we need not conduct the third inquiry as to whether it is fair and reasonable to require the defendants to defend this suit in New Hampshire. *See Vt. Wholesale*, 154 N.H. at 629. Accordingly, for all of the above reasons, we hold that the facts pled by the plaintiffs were insufficient to justify the exercise of *in personam* jurisdiction over the defendants, as either successor trustees or beneficiaries. To the extent the plaintiffs further argue that the defendants are subject to *quasi in rem* jurisdiction, this argument also fails for the same reasons as their *in personam* argument. *See Altshuler Genealogical Service v. Farris*, 128 N.H. 98, 101 (1986) ("The traditional test for *in personam* jurisdiction is also applied in determining the existence of *quasi in rem* jurisdiction.").

The plaintiffs next maintain that the trial court did not err in finding that New Hampshire has jurisdiction over the beneficiaries to the extent that they benefited from the trust property. Relying on the Restatement (Second) of Trusts § 279 (1959), the plaintiffs argue that "[t]he beneficiaries can be disgorged of the trust property that they received." This argument, however, is misplaced, as it equates potential liability with personal jurisdiction.

■ Restatement (Second) of Trusts § 279 provides:

> If a creditor is entitled by a proceeding in equity to reach trust property and apply it to the satisfaction of his claim, and the trustee conveys the trust property to the beneficiary before the claim has been paid, the creditor can by a proceeding in equity hold the beneficiary personally liable for the claim to the extent of the value of the trust property so conveyed, unless the beneficiary is a bona fide purchaser or has so changed his position that it is inequitable to hold him personally liable.

The existence of a proceeding in equity against a beneficiary to reach trust property for purposes of satisfying a claim does not, in and of itself, establish personal jurisdiction over a beneficiary. Whether a beneficiary can

be held liable to the extent of the value of trust assets received is a separate issue from whether the court has personal jurisdiction over the beneficiary. *See Mosier*, 142 N.H. at 423-24 (stating that the issue of jurisdiction is separate from the other issues in litigation and procedurally must be finally decided before those issues are reached). We have already determined that the beneficiaries do not have sufficient minimum contacts with New Hampshire to subject them to jurisdiction here.

Finally, the plaintiffs argue that RSA 564-B:2-202 (2007) supports jurisdiction over the defendants. The defendants disagree and argue that, to the extent that this provision can be construed to require nonresident trustees and/or beneficiaries to defend a suit in New Hampshire with no appreciable contacts here, it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

RSA 564-B:2-202 provides, in pertinent part:

(a) By accepting the trusteeship of a trust having its principal place of administration in this state or by moving the principal place of administration to this state, the trustee submits personally to the jurisdiction of the courts of this state regarding any matter involving the trust.

(b) With respect to their interests in the trust, the beneficiaries of a trust having its principal place of administration in this state are subject to the jurisdiction of the courts of this state regarding any matter involving the trust. By accepting a distribution from such a trust, the recipient submits personally to the jurisdiction of the courts of this state regarding any matter involving the trust.

Thus, under RSA 564-B:2-202, personal jurisdiction in New Hampshire over trustees and/or beneficiaries of a trust may be predicated upon a finding that the trust's principal place of administration was New Hampshire.

As evidence that the trust's principal place of administration was New Hampshire, the plaintiffs point to the existence of the abatement order against the trust and the fact that Marvin and Thelma visited New Hampshire to sign for, and acknowledge, the abatement order. These acts alone, however, are not sufficient to demonstrate that the trust was administered in New Hampshire. *See N. Atlantic Ref. Ltd.*, 160 N.H. at 280 (the plaintiffs bear the burden of proffering "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction" (quotation omitted)). Aside from these acts, the plaintiffs offer no more than conclusory statements that the trust's principal place of administration was

New Hampshire. Accordingly, the plaintiffs failed to provide sufficient evidence to demonstrate that the trust's principal place of administration was New Hampshire. Thus, we need not address whether RSA 564-B:2-202 offends due process in the context of this case.

*Reversed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.