Sullivan
No. 2012-492

KIMBALL UNION ACADEMY

v.

JOHN GENOVESI & a.

Argued: February 13, 2013
Opinion Issued: June 28, 2013

*Sheehan, Phinney, Bass + Green, P.A.*, of Manchester (*John-Mark Turner* and *Peter S. Cowan* on the brief, and *Mr. Turner* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn & a.* on the brief, and *Jonathan M. Eck* orally), for defendant John Genovesi.

HICKS, J. Defendant John Genovesi appeals the refusal of the Superior Court (*Tucker*, J.) to dismiss, for lack of personal jurisdiction, a claim against him for professional negligence brought by the plaintiff, Kimball Union Academy (KUA). Defendants JDE, Inc. (JDE) and James DePaul are not involved in this appeal. We affirm and remand.

KUA's writ alleges the following facts. KUA is a college preparatory school located in Meriden. It hired JDE to design and build a field house facility on its campus. JDE is a Florida corporation with a place of business in Pennsylvania. James DePaul is JDE's president and resides in Pennsylvania. Under its contract with KUA, JDE was required to supply an architect and an engineer, both licensed in New Hampshire, for the project's design.

The writ further alleges that Genovesi is a professional engineer who resides in New Jersey. He is not licensed in New Hampshire. Nevertheless, JDE hired him "to perform certain design work for the footings and foundation system" of the field house. JDE and Genovesi failed to "prepare a complete set of construction documents, for the footing and foundation system design," prior to the commencement of work on the footings and foundation. The incomplete design "lacked key information essential to the construction and proper inspection of the footings and foundation system. Among other things, [Genovesi] failed to provide (or to determine that others were providing) special inspection instructions for the footings and foundation system as required by the" applicable building code.

KUA's writ alleges a number of problems with the footing and foundation work that prompted it to terminate its contract with JDE and commence this action. The writ alleges a single count, for professional negligence, against Genovesi, which reads, in part, as follows:

> [Genovesi] breached his duty to KUA by failing to perform his work on the Project in conformance with both the applicable laws and codes and with the applicable professional practice standards governing his work by, among other things, failing to prepare complete construction documents and failing to supply special inspection instructions for the footing and foundation work and/or to determine that such special inspection instructions were provided.

Genovesi moved to dismiss, asserting that the superior court lacks personal jurisdiction over him. He submitted an affidavit averring that he has "never resided in New Hampshire, owned any real property in New Hampshire, advertised in New Hampshire, had any business interests in New Hampshire, or even been in New Hampshire since a ski vacation . . . more than thirty years before the circumstances of this case arose." He also averred that he "did all of the work in connection with preparing foundation drawings from [his] office in New Jersey." KUA objected, submitting, among other things, copies of the contract between Genovesi and JDE, Genovesi's bill for services, which reflects three conference calls with New

Hampshire participants, and certain e-mails. The trial court denied Genovesi's request for an evidentiary hearing and denied his motion to dismiss. This appeal followed.

Our standard of review for rulings on motions to dismiss for lack of personal jurisdiction varies according to the case's procedural posture. *State v. N. Atlantic Ref. Ltd.*, 160 N.H. 275, 280 (2010). "When, as in this case, the trial court rules upon the motion without holding an evidentiary hearing, the trial court employs a *prima facie* standard, and we review the trial court's decision *de novo*." *Id.* (quotation omitted). The inquiry under the *prima facie* standard is whether the plaintiff "has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Id.* (quotation omitted). "[T]he plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts." *Id.* at 281 (quotation omitted). Both the trial court and we, when undertaking *de novo* review, "must accept the plaintiff's (properly documented) proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Id.* (quotation omitted). The plaintiff's evidentiary proffers must be construed "in the light most congenial to the plaintiff's jurisdictional claim" and "[f]acts put forward by the defendant may be considered only if they are uncontradicted by the plaintiff's submissions." *Id.* (quotation omitted).

Genovesi first argues that the trial court erred in failing to conduct an analysis under New Hampshire's long-arm statute. *See* RSA 510:4, I (2010). "To decide whether it may exercise *in personam* jurisdiction over a non-resident defendant, a court typically must engage in a two-part inquiry. First, the State's long-arm statute must authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." *Fellows v. Colburn*, 162 N.H. 685, 690 (2011) (quotation and citation omitted).

Genovesi acknowledges our case law construing the New Hampshire long-arm statute to permit "the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause," *id.*, but asserts that this interpretation "does not permit a trial court to conflate the analyses in circumstances where the plain language of the statutory requirements have not been met." We are not persuaded. "Because we construe the long-arm statute broadly, personal jurisdiction over nonresidents may be exercised whenever the requirements of the Due Process Clause of the United States Constitution are satisfied." *Alacron v. Swanson*, 145 N.H. 625, 628 (2000) (citation omitted). Moreover, we disagree that Genovesi does not fall within the statute's plain language.

New Hampshire's long-arm statute provides, in part:

> Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, [or] commits a tortious act within this state . . . submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

RSA 510:4, I. Genovesi contends that he did not transact any business in this state, given that it is undisputed that his business transactions were with JDE, a Florida corporation, and DePaul, a Pennsylvania resident. He also asserts that he did not commit a tortious act in New Hampshire, "as he completed all of his work from his office in New Jersey."

■ KUA counters that the long-arm statute is satisfied because Genovesi's tortious act caused injury in New Hampshire. We agree. "For jurisdictional purposes, a party commits a tortious act within the State when the injury occurs in New Hampshire even if the injury is the result of acts outside the State." *Thomas v. Telegraph Publ'g Co.*, 151 N.H. 435, 437 (2004); *see Tavoularis v. Womer*, 123 N.H. 423, 426 (1983) (holding that "the fact that only the alleged injury occurred within the State does not preclude New Hampshire courts from subjecting a nonresident to their jurisdiction under the long-arm statute").

Genovesi argues, however, that KUA has "failed to allege an injury which can be causally related to the alleged negligent actions taken by [him]" because it "does not allege that [his] designs were actually used by JDE to complete the KUA field house." In fact, Genovesi points out, KUA's writ alleges that "[t]he footing and foundation work performed by JDE did not conform to the design prepared by [Genovesi]." Thus, Genovesi argues, his designs could not have caused injury in New Hampshire even assuming they were negligently prepared.

■ Genovesi's argument is unavailing. First, as KUA notes, its writ alleges that "[t]he footing and foundation system design prepared by [Genovesi] *and used by JDE* was incomplete and lacked key information." (Emphasis added.) Moreover, that KUA's writ alleges JDE negligently executed Genovesi's design does not negate its allegation that the design itself was also negligently prepared by Genovesi. Any issue related to the actual causation of injury is, as KUA suggests, a merits issue rather than a jurisdictional one. For similar reasons, we are not persuaded by Genovesi's argument that "JDE was supposed to present Mr. Genovesi's foundation design to a New Hampshire-licensed professional engineer for review, signature, and seal by that engineering professional prior to

submission to the [town] for a building permit." Again, this fact, even if true, does not negate the allegation that Genovesi was negligent in the first instance. Issues of ultimate responsibility are not before us. We conclude that because Genovesi is alleged to have caused injury in New Hampshire by his tortious acts, the requirements of New Hampshire's long-arm statute have been met. *See Thomas*, 151 N.H. at 437.

■■ We now turn to the second prong of the jurisdictional inquiry — whether the requirements of the Federal Due Process Clause are satisfied. *See Fellows*, 162 N.H. at 690. Under the Federal Due Process Clause, "a court may exercise personal jurisdiction over a non-resident defendant if the defendant has minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 690-91 (quotation omitted). KUA does not contend that Genovesi has the "continuous and systematic" contacts with New Hampshire to support general jurisdiction; rather, the issue is whether KUA has demonstrated specific jurisdiction, "where the cause of action arises out of or relates to the defendant's forum-based contacts." *Id.* at 691.

> In determining whether the exercise of specific personal juris-
> diction over a defendant comports with due process, we examine
> whether: (1) the contacts relate to the cause of action; (2) the
> defendant has purposefully availed [himself] of the protection of
> New Hampshire's laws; and (3) it would be fair and reasonable to
> require the defendant to defend the suit in New Hampshire. Each
> factor must be evaluated on a case-by-case basis, and all three
> factors must be satisfied in order for the exercise of jurisdiction to
> be constitutional.

*Id.* (citation omitted).

■ Genovesi asserts that neither the first nor second factor is met here. "The first inquiry, relatedness, asks whether the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities." *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 9 (1st Cir. 2009) (quotations, brackets, and ellipsis omitted). The test for relatedness is a "flexible, relaxed standard." *Id.* (quotations omitted). "To satisfy the relatedness factor, there must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." *N. Atlantic Ref. Ltd.*, 160 N.H. at 282 (quotation and brackets omitted).

Genovesi argues that the trial court erred in finding sufficient minimum contacts in the form of three telephone conferences and one e-mail he directed into New Hampshire where "KUA does not allege that [he] committed any tort through his e-mail or during [those] telephone communications" and his "e-mail and telephone contacts with New Hampshire do not form an element of proof, material or otherwise, necessary to establish KUA's cause of action against [him] for professional negligence." Rather, he contends, KUA alleges negligence in the preparation of design work that he: (1) "contracted exclusively with JDE, a non-New Hampshire entity, to prepare"; (2) completed at his office in New Jersey; and (3) submitted to DePaul in Pennsylvania by e-mail.

█ █ Genovesi's argument, however, like that of the defendant in *Astro-Med*, "emphasizes too fine a point." *Astro-Med*, 591 F.3d at 10. "[A] defendant need not be physically present in the forum state to cause injury (and thus "activity" for jurisdictional purposes) in the forum state." *Id.* (quotation omitted). Genovesi's allegedly negligent design work in New Jersey led to the injury to KUA in New Hampshire. "That in-forum injury was clearly related to" KUA's professional negligence claim. *Id.*

Moreover, that the injury would occur in New Hampshire was entirely foreseeable. *See N. Atlantic Ref. Ltd.*, 160 N.H. at 282 (noting that "[t]he court's assessment of relatedness is informed by the concept of foreseeability") (quotation omitted)). The proffered evidence shows that Genovesi gave JDE a "proposal for engineering services to provide a foundation design for the 160' x 250' KUA Field House." The proposal referenced the project's address in New Hampshire. Genovesi was therefore aware that his plans would be utilized in constructing a building in New Hampshire.

Furthermore, the trial court noted that "Genovesi actively engaged in making his work suitable to its location in New Hampshire, mindful of local restrictions and in coordination with local specialists." For instance, in an e-mail to DePaul, Genovesi stated that he "spoke with Richard Porter of Engineered Foundation Technologies [in Nashua] at some length regarding the site conditions" and that he would "proceed with the foundation design along th[e] line" they discussed. The trial court concluded that "[a]n integral part of Genovesi's work was the location of the Project, and Genovesi maintained extensive contacts with New Hampshire in order to make his design fit the specifications of that location." We find no error in the court's determination that Genovesi's New Hampshire contacts related to KUA's cause of action.

■ The second factor asks whether "the defendant has purposefully availed [himself] of the protection of New Hampshire's laws." *Fellows*, 162 N.H. at 691.

> Purposeful availment requires both foreseeability and voluntariness. Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant *himself*. The contacts must be deliberate, and not based on the unilateral actions of another party. Foreseeability requires that the contacts also must be of a nature that the defendant could reasonably anticipate being haled into court there.

*N. Atlantic Ref. Ltd.*, 160 N.H. at 284 (quotations and citations omitted).

■ Genovesi maintains that he, "by his own acts, sought to contract with JDE and agreed to design a foundation from New Jersey pursuant to specifications submitted by JDE." Genovesi knew, however, that his design would be used to construct a building in New Hampshire. As noted above, his proposal to JDE referenced the field house facility's address in New Hampshire. The scope of the proposed work included "[d]etermin[ing] local environmental loads in accordance with State, County and Town building codes." It also proposed the "[r]eview [of] geotechnical report test data and recommendations" and promised that "[d]rawings will be complete and ready for review and signature by a local professional for submission to the [town] for a building permit." The use of the allegedly negligent design in New Hampshire cannot be said to constitute "unilateral action[ ]" by JDE that would render Genovesi's contact with New Hampshire involuntary. *Id.* (quotation omitted). Moreover, because Genovesi "purposefully entered into a contract [with JDE] which had substantial connections with New Hampshire, . . . [he] could reasonably anticipate being haled into court here." *Computac*, 124 N.H. at 354. It was foreseeable that any injury that would result from negligent preparation of the foundation design would occur in New Hampshire, where the foundation was constructed, and that suit would be brought here as a result. *Cf. id.* Accordingly, we find the purposeful availment factor satisfied.

Genovesi contends, however, that to establish the purposeful availment factor, we have "required an increased quantum of proof . . . where an out-of-state defendant's products end up in New Hampshire despite the fact that there was no direct sale by the defendant to a New Hampshire resident." He asserts that this analysis, dubbed "stream of commerce plus," should be applied in this case.

■ We have adopted the "stream of commerce plus" theory in products liability cases. *See N. Atlantic Ref. Ltd.*, 160 N.H. at 284. Under that theory,

which was first put forth by Justice O'Connor in her plurality opinion in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-13 (1987), the defendant's "placement of a product into the stream of commerce, without more, is not an act . . . purposefully directed toward the forum State." *Id.* (quotations and brackets omitted). Nor is the "defendant's awareness that the stream of commerce may or will sweep the product into the forum state sufficient to establish purposeful availment." *Id.* (quotation omitted). "Rather, to meet the purposeful availment factor, there must be additional conduct of the defendant that indicates an intent or purpose to serve the market in the forum State." *Id.* (quotations and brackets omitted).

This is not, however, a products liability case, or even a case in which a manufacturer places a product into the "stream of commerce" without directing it to a specific destination. Thus, as KUA points out, the "stream of commerce plus" analysis is of doubtful application here. *Cf. Burman v. Phoenix Worldwide Industries, Inc.*, 437 F. Supp. 2d 142, 149 n.4 (D.D.C. 2006) (noting lack of controlling authority for "the notion that the stream of commerce theory applies to services rendered, as a defendant's liability for faulty manufactured products was the sole focus of the Supreme Court's discussion in *Asahi*").

Even so, that analysis recognizes, as "additional conduct" supporting the exercise of jurisdiction, the defendant's act of "designing the product for the market in the forum State." *N. Atlantic Ref. Ltd.*, 160 N.H. at 284 (quotation omitted). As previously noted, Genovesi tailored his design to fit specific site conditions at the project's New Hampshire location. Thus, even were we to apply the "stream of commerce plus" analysis, we would find the requisite "additional conduct of the defendant that indicates an intent or purpose to serve the market in the forum State" such that the exercise of personal jurisdiction over him would not offend due process. *Id.* (quotations and brackets omitted).

Having concluded that KUA has met its burden on the first two factors, we ordinarily would now consider the third. *See Fellows*, 162 N.H. at 691. Because Genovesi has not addressed this factor in his brief, however, we conclude that he does not challenge the trial court's finding that "it would be fair and reasonable to require him to defend the suit in New Hampshire." Accordingly, we affirm and remand.

*Affirmed and remanded.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.