Hillsborough-southern judicial district
No. 98-442

ALACRON, INC.

v.

WILLIAM SWANSON & a.

December 28, 2000

*Law Offices of Randall E. Wilbert,* of Nashua (*Christopher W. Kelley* and *Randall E. Wilbert* on the brief, and *Mr. Wilbert* orally), for the plaintiff.

*Wiggin & Nourie, P.A.,* of Manchester (*Thomas J. Pappas* and *Stephanie A. Bray* on the brief, and *Ms. Bray* orally), for defendants William Swanson, William Watts, and James Holly.

*Cook, Little, Rosenblatt & Manson, p.l.l.c.,* of Manchester (*Arnold Rosenblatt* and *Michael S. Owen* on the brief, and *Mr. Owen* orally), for defendants Esther P. Swanson and Edwin L. Swanson.

BROCK, C.J. The defendants, William Swanson, James Holly, William Watts, Esther Swanson, and Edwin Swanson, all residents of California, appeal an order of the Superior Court (*Dalianis,* J.) denying their motion to dismiss for lack of personal jurisdiction. We affirm and remand.

This action arises out of the purchase of Hyperspeed Technologies, Inc. (Hyperspeed), a closely held California corporation in the business of manufacturing computer hardware and software, by the plaintiff, Alacron, Inc. (Alacron), a computer products manufacturer with a principal place of business in Nashua. Between 1992 and 1996, Hyperspeed sold computer products to New Hampshire customers. In 1996, Alacron approached the defendants, who were Hyperspeed's only principals at that time, to negotiate the purchase of all of Hyperspeed's assets and stock. Between the spring and fall of 1996, the parties negotiated the purchase through personal meetings in California and through telephone conversations, facsimiles, and letters between California and New Hampshire. On December 31, 1996, one day before Alacron's purchase of Hyperspeed, all of the defendants, as the directors of Hyperspeed, signed a corporate resolution authorizing the sale of Hyperspeed to Alacron. Also before the purchase, Edwin and Esther Swanson, officers and directors of Hyperspeed at that time, called due a promissory note, held by them as trustees of the Swanson Family

Trust, against Hyperspeed in the amount of thirty thousand dollars. The acceleration of this note was not disclosed to Alacron before the purchase of Hyperspeed.

As part of the stock purchase agreement (agreement), Hyperspeed and its shareholders, William Swanson and James Holly, represented and warranted the financial condition of the company and the quality of its products. The agreement provided that after the purchase of Hyperspeed: (1) Watts would be elected as a director and chief executive officer of Hyperspeed; (2) Holly and William Swanson would be elected as vice presidents of Hyperspeed; and (3) William Swanson, Holly, and Watts would become contract employees of Alacron. In addition, Holly and William Swanson agreed to indemnify Alacron against any liability incurred by Hyperspeed that had not been disclosed to Alacron before the purchase. The parties completed the agreement on January 1, 1997. To fulfill their employment obligations to Alacron after the agreement, Holly, Watts, and William Swanson routinely traveled to New Hampshire.

In the fall of 1997, Alacron discovered that the defendants allegedly misrepresented Hyperspeed's financial condition and the quality of its products. In response, Alacron brought this action asserting misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Alacron also sought indemnification from Holly and William Swanson pursuant to the agreement.

The defendants moved to dismiss for lack of personal jurisdiction. In response, Alacron submitted an affidavit by Alacron's Chief Executive Officer, Dr. Joseph Sgro, that identified Alacron as a corporation with its principal and only place of business in New Hampshire. In addition, Sgro, based on personal knowledge, described the events leading up to the agreement and the defendants' contacts with Alacron, including their alleged misrepresentations. According to the superior court, "Alacron has sufficiently pleaded that the defendants' alleged tortious misrepresentations caused injury to Alacron in our State" and exercising personal jurisdiction over the defendants was consistent "with traditional notions of fair play and substantial justice." As a result, the court denied the motion. This appeal followed.

On appeal, the defendants assert that the trial court misapplied the standard by which a party's contacts with the forum State are measured under the State's long-arm statute and the Due Process Clause of the Fourteenth Amendment of the Federal Constitution.

In addition, they assert that the trial court failed to address their individual jurisdictional defenses.

■ Generally, when a motion to dismiss is reviewed, "all facts properly pleaded by the plaintiff are deemed true." *Brother Records v. HarperCollins Publishers*, 141 N.H. 322, 324, 682 A.2d 714, 715-16 (1996). When jurisdiction is contested, however, "[t]he plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant." *Phelps v. Kingston*, 130 N.H. 166, 170, 536 A.2d 740, 742 (1987). The plaintiff need only make a *prima facie* showing of jurisdictional facts to defeat the defendants' motion to dismiss. *See Brother Records*, 141 N.H. at 325, 682 A.2d at 716.

■ The State's long-arm statute, RSA 510:4, I (1997), permits jurisdiction over "[a]ny person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state." Because we construe the long-arm statute broadly, *see Leeper v. Leeper*, 114 N.H. 294, 296-97, 319 A.2d 626, 627-28 (1974), personal jurisdiction over nonresidents may be exercised whenever the requirements of the Due Process Clause of the United States Constitution are satisfied. *See Estabrook v. Wetmore*, 129 N.H. 520, 523, 529 A.2d 956, 958 (1987).

■ The federal Due Process Clause permits the exercise of personal jurisdiction over a foreign defendant if "the defendant has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brother Records*, 141 N.H. at 324, 682 A.2d at 715 (quotations and ellipsis omitted). Where, as here, specific rather than continuous contacts with the forum are the basis for personal jurisdiction, whether these contacts are sufficient to confer jurisdiction over a foreign defendant depends upon the relationship between the defendant, the forum, and the litigation. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). The focus of this inquiry, therefore, is not merely whether each of the defendants' contacts might have caused injury in New Hampshire, but whether these contacts should have given each defendant notice that he or she should reasonably have anticipated being haled into court in this State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This second inquiry looks for "some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Staffing Network, Inc. v. Pietropaolo*, 145 N.H. 454, 764 A.2d 905 (2000). If a defendant's contacts with a forum State are sufficient to have reasonably foreseeable consequences within that forum, *see Tavoularis v. Womer*, 123 N.H. 423, 427, 462 A.2d 110, 113 (1983), physical presence of a defendant in the forum is not required to confer jurisdiction over that defendant. *See Burger King*, 471 U.S. at 476.

All of the defendants assert that the plaintiff failed to establish that they had minimum contacts with New Hampshire. We disagree.

Alacron's legal action against the defendants arises from and is related to the defendants' contacts with New Hampshire. In addition, each defendant purposefully directed actions at the forum by authorizing an agreement that had a substantial connection to New Hampshire and approving all activities related to this agreement. *See, e.g., Computac, Inc. v. Dixie News Co.*, 124 N.H. 350, 354, 469 A.2d 1345, 1347-48 (1983); *see also Pacific & Atlantic Shippers v. Schier*, 109 N.H. 551, 553, 258 A.2d 351, 354 (1969) (officer of a corporation is liable for any tort of the corporation in which the officer participates or that the officer authorizes even though the officer may be acting for the corporation when the tort is committed). Holly and William Swanson personally negotiated and signed the agreement with Alacron. The agreement guaranteed that defendants Holly, William Swanson, and Watts would remain agents of Hyperspeed and would hold controlling positions within the company. By signing the corporate resolution, each defendant authorized and approved all actions by Hyperspeed relating to the agreement, including Hyperspeed's representations in the agreement. Activities authorized by the resolution leading up to the agreement included communicating with Alacron between California and New Hampshire, selling computer goods to Alacron, and collaborating on a computer project with Alacron. Representations in the agreement included information about the financial status of Hyperspeed, including the disclosure of all of Hyperspeed's liabilities.

Although Edwin and Esther Swanson specifically allege that as individuals they have insufficient contacts with the forum relating to this litigation, we disagree. Like the other three defendants, Edwin and Esther Swanson authorized the purchase agreement with Alacron. In doing so, they authorized all representations made within the agreement and all activities relating to this agreement. By authorizing this agreement it was their responsibility to ensure

that the representations made in this agreement were accurate. Directly after they authorized the sale of Hyperspeed to Alacron, they also called due a promissory note held by them as trustees. According to Alacron, before executing the agreement to purchase Hyperspeed, it had not been forewarned that this promissory note would be accelerated.

The fact that the defendants were not physically present in New Hampshire during most of their interaction with Alacron does not shield them from jurisdiction here. *See, e.g., Computac,* 124 N.H. at 354, 469 A.2d at 1347 ("Given the technological advances in communications in recent years, telephone and mail contacts are of increasing jurisdictional significance."). Considering the totality of each defendant's contacts with Alacron, each defendant should have reasonably anticipated being haled into court in New Hampshire. *See, e.g., Tavoularis,* 123 N.H. at 427, 462 A.2d at 113-14 (where only contact relating to the forum in tort action was the location of the injury, due process satisfied because it was reasonably foreseeable that the consequences of the defendant's out-of-state activities would manifest themselves in the forum).

Moreover, jurisdiction over the defendants comports with traditional notions of fair play and substantial justice. *See Phelps,* 130 N.H. at 172-75, 536 A.2d at 743-45. In making this determination, we consider the following factors:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 172, 536 A.2d at 743 (quotations omitted).

We conclude that the defendants' burden of defending this case in New Hampshire is offset by Alacron's interest in obtaining resolution of this case in New Hampshire. Obviously, New Hampshire has a significant interest "in affording injured New Hampshire plaintiffs a forum in which to litigate the question of liability for their injuries." *Id.* at 175, 536 A.2d at 745. Finally, significant information relating to this action is located in New Hampshire, making New Hampshire an efficient forum in which to resolve this case. We conclude that sufficient contacts existed to satisfy due process requirements. *See, e.g., Kopf v. Chloride Power Electronics,*

*Inc.*, 882 F. Supp. 1183, 1192-97 (D.N.H. 1995), *overruled on other grounds*, 76 F.3d 413, 429 n. 11 (1st Cir. 1996).

*Affirmed and remanded.*

BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.