NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Banking Department
No. 2016-0567

PETITION OF JOHN PAUL REDDAM
(New Hampshire Banking Department)

Argued: September 20, 2017
Opinion Issued: February 9, 2018

McLane Middleton, Professional Association, of Manchester (Wilbur A. Glahn, III, Michael A. Delaney, Andrew R. Hamilton, and Benjamin B. Folsom on the brief, and Mr. Glahn orally), for John Paul Reddam.

Gordon J. MacDonald, attorney general (Seth M. Zoracki, assistant attorney general, on the brief and orally), for the New Hampshire Banking Department.

LYNN, J. The New Hampshire Banking Department (Department) initiated an adjudicative proceeding against CashCall, Inc. (CashCall), WS Funding, LLC (WS Funding), and John Paul Reddam, for violations of RSA chapter 399-A (2006 & Supp. 2012) (repealed and reenacted 2015). By petition for a writ of certiorari, see Sup. Ct. R. 11, Reddam challenges the Department's denial of his motion to dismiss for lack of personal jurisdiction.[1] We affirm and remand.

_____

[1] Although Reddam is the petitioner here, he, as well as CashCall and WS Funding, are respondents in the underlying action. For ease of reference, we will refer to them collectively as "the respondents," and we will refer to CashCall and WS Funding as "the respondent companies."

The following facts come from the parties' stipulation or are otherwise found in the record. Reddam is the president and chief executive officer of CashCall, a lending and loan services corporation headquartered and incorporated in California. Reddam owns all of CashCall's corporate stock. Reddam is also the president of WS Funding, a wholly owned subsidiary of CashCall. WS Funding is a Delaware limited liability company with a principal place of business in California. Neither Reddam, CashCall, nor WS Funding is licensed under RSA chapter 399-A to issue small loans in New Hampshire.

Both CashCall and WS Funding have contractual relationships with Western Sky Financial, which is not a party to this action. Western Sky Financial is wholly owned by an enrolled member of the Cheyenne River Sioux Tribe, which is a sovereign Indian nation located within South Dakota and recognized by the United States Department of the Interior.

CashCall is a licensed mortgage banker in New Hampshire under RSA chapter 397-A (2006 & Supp. 2011). Pursuant to RSA 397-A:12 (Supp. 2011), the Department commenced an examination of CashCall in early 2012. The Department's examiner discovered that CashCall appeared to be engaged in the business of purchasing and servicing small loans or "payday loans" in association with Western Sky Financial.

In June 2013, after analyzing and reviewing CashCall's responses to an administrative subpoena duces tecum and reviewing the business relationships among CashCall, WS Funding, and Western Sky Financial, the Department issued a cease and desist order to CashCall, WS Funding, and Reddam. In the cease and desist order, the Department found that either CashCall, or WS Funding, was the "actual" or "de facto" lender for the payday and small loans, and that Western Sky Financial was a front for the respondents' unlicensed activities.

As relevant here, the relationship among these companies was primarily governed by two agreements that they entered into in 2010: an "Agreement for Service" (Service Agreement) between CashCall and Western Sky Financial; and an "Agreement for the Assignment and Purchase of Promissory Notes" (Assignment Agreement) between WS Funding and Western Sky Financial. (Quotations omitted.) Reddam signed the Service Agreement as president of CashCall, and he signed the Assignment Agreement as president of WS Funding. Through 2013, pursuant to these agreements, CashCall reimbursed Western Sky Financial for numerous office and operational expenses, including payroll expenses, advertising expenses, and fees paid to consumer loan lead generators, and provided website hosting and support services for Western Sky Financial's website. CashCall informed prospective borrowers that it was assisting them with the loan application process on behalf of Western Sky

Financial.  Pursuant to the Assignment Agreement, Western Sky Financial agreed to assign and WS Funding agreed to purchase all loans made through Western Sky Financial's website.  Every borrower received a notice of assignment that identified WS Funding as the purchaser of the loan and directed the borrower to remit all payments to CashCall.

Between July and October 2013, attorneys from four different law firms filed appearances on behalf of the respondents.  The respondents issued discovery requests to the Department and responded to the Department's discovery requests.  The Department and the respondents also negotiated a four-page stipulation of uncontested facts.

In December 2013, the respondents moved to dismiss or, alternatively, stay the cease and desist order pending the outcome of arbitration, arguing that: (1) the Department's action violated the dormant Commerce Clause of the Federal Constitution; (2) the Department lacked subject matter jurisdiction to "penalize or halt tribal member conduct"; and (3) the Department's claims were subject to binding arbitration provisions contained in the loan agreements. Reddam additionally argued that he is not subject to personal jurisdiction in New Hampshire, and he attached a supporting affidavit.

As relevant here, Reddam stated in his affidavit that he had never lived in New Hampshire, had not visited New Hampshire in the preceding year, owned no real property in New Hampshire, and had no personal business dealings in New Hampshire.  With regard to his activity through CashCall, Reddam stated that, to his knowledge, he had "never personally interacted with any Western Sky borrower whose loan was serviced by CashCall" and had "no personal involvement with CashCall's servicing and collection operation, except that [he] instruct[ed] CashCall managers and supervisors to ensure that all applicable laws are obeyed."

In April 2016, the Department's presiding officer denied the respondents' motion.  Regarding Reddam's personal jurisdiction argument, the Department found that it could constitutionally exercise jurisdiction over Reddam.  Reddam filed a motion for rehearing, which, in a proposed order, the Department's reviewing officer recommended be denied, and the Department's commissioner accepted the reviewing officer's proposed order as a final order.  This petition followed.

In his petition, Reddam argues that the Department erred by ruling that it had personal jurisdiction over him.  The Department argues that it properly exercised jurisdiction over Reddam and makes two alternative arguments: (1) that Reddam's petition should be dismissed for failing to exhaust his administrative remedies; and (2) that Reddam waived his personal jurisdiction defense by actively litigating the action for six months before asserting that the Department lacked personal jurisdiction over him.

3

## II

"Our standard of review for rulings on motions to dismiss for lack of personal jurisdiction varies according to the case's procedural posture." N.H. Bank Comm'r v. Sweeney, 167 N.H. 27, 32 (2014). When, as in this case, the Department rules on the motion without holding an evidentiary hearing, the Department employs a prima facie standard, and we review its decision de novo. See id. Under the prima facie standard, the inquiry is whether the Department has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction. See id. The Department ordinarily cannot rest upon the pleadings, but must adduce evidence of specific facts. See id. Both the Department and this court, when undertaking de novo review, must accept the Department's properly documented proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing. See id. The Department's evidentiary proffers must be construed in the light most congenial to its jurisdictional claim, and facts put forward by a respondent may be considered to the extent they are uncontradicted. See id.

Determining whether a court may exercise personal jurisdiction over a respondent contemplates a two-part analysis. Id. "First, the State's long-arm statute must authorize such jurisdiction." Id. (quotation omitted). "Second, the requirements of the [F]ederal Due Process Clause must be satisfied." Id. (quotation omitted). "However, because New Hampshire's long-arm statute authorizes the exercise of personal jurisdiction over a non-resident to the extent permissible under the Federal Due Process Clause, the due process analysis is normally dispositive of the matter." Id. (quotation and citation omitted); see also Metcalf v. Lawson, 148 N.H. 35, 37 (2002) (stating that, in determining whether a New Hampshire court may exercise personal jurisdiction over a non-resident defendant, "our primary analysis relates to due process").

## III

We first address the Department's argument that this petition should be dismissed as premature because Reddam did not exhaust his administrative remedies. "The rule requiring administrative remedies to be exhausted prior to appealing to the courts is based on the reasonable policies of encouraging the exercise of administrative expertise, preserving agency autonomy and promoting judicial efficiency." Konefal v. Hollis/Brookline Coop. School Dist., 143 N.H. 256, 258 (1998) (quotation omitted). We have recognized that the exhaustion of administrative remedies doctrine is flexible, and that exhaustion is not required under certain circumstances. Id.

The Department argues that we should dismiss Reddam's petition because he seeks review of an interlocutory agency order rather than a final

order.  According to the Department, Reddam should not seek review until after the final hearing on the Department's claims.  We disagree.

Reddam argues that it is a violation of the Federal Due Process Clause for New Hampshire to exercise jurisdiction over him.  That clause protects a non-resident respondent from the burden of litigating in a foreign forum unless the "respondent has minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Sweeney, 167 N.H. at 33.  The Department ruled that it had made a prima facie showing of personal jurisdiction, and it denied Reddam's motion for rehearing.  Under such circumstances, if the Department erred in concluding that the exercise of personal jurisdiction over him was proper, it would be unfair — absent extraordinary countervailing considerations (which have not been brought to our attention) — to require Reddam to defend the dispute on the merits in order to preserve his jurisdictional challenge.  See Mosier v. Kinley, 142 N.H. 415, 424 (1997) ("[I]t would be unfair to force a defendant to expend the time and resources necessary to mount a defense on the merits if the court has no personal jurisdiction over the defendant."); cf. N.H. Super. Ct. R. 9(e).  The longer that Reddam, a resident of California, is required to defend this litigation in New Hampshire, the greater the burden.  Thus, to minimize this burden, it is best to resolve as early as possible the issue of whether the Department made a prima facie showing of personal jurisdiction.  See Mosier, 142 N.H. at 424 (ruling that a defendant must seek an immediate appeal of a trial court's ruling on personal jurisdiction or waive the ability to later attack that ruling).

Therefore, under these circumstances, we reject the Department's argument that we should dismiss Reddam's petition for failing to exhaust his administrative remedies.

IV

We now turn to the substance of Reddam's argument that the Department erred by ruling that it could exercise personal jurisdiction over him.  "Under the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident respondent if the respondent has minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Sweeney, 167 N.H. at 33.  "Personal jurisdiction can be 'general,' if the respondent's contacts with the forum state are 'continuous and systematic,' or 'specific,' if 'the cause of action arises out of or relates to the respondent's forum-based contacts.'"  Id. (brackets omitted).  Here, the Department asserts only that the court may exercise specific personal jurisdiction.  Whether a respondent's contacts are sufficient to confer specific personal jurisdiction "depends upon the relationship between the [respondent], the forum, and the litigation."  Alacron v. Swanson, 145 N.H. 625, 628 (2000).

5

In determining whether the exercise of specific personal jurisdiction over the respondent comports with due process, we examine whether: (1) the contacts relate to the cause of action; (2) the respondent has purposefully availed himself of the protection of New Hampshire's laws; and (3) it would be fair and reasonable to require the respondent to defend the suit in New Hampshire. Sweeney, 167 N.H. at 33. "Each factor must be evaluated on a case-by-case basis, and all three factors must be satisfied for the exercise of jurisdiction to be constitutional." Id.

A. Control Person Liability

The parties first dispute whether Reddam's status as a "control person" of the respondent companies is sufficient to establish personal jurisdiction.[2] See RSA 399-A:18, VI (Supp. 2012) (setting forth the penalty for "[e]very person who directly or indirectly controls a person liable under this section"). Reddam argues that, while a control person may be statutorily liable, statutory liability does not, standing alone, equate to minimum contacts between the control person and the forum. The Department disagrees, and it alternatively argues that Reddam's status as a control person is at least "a factor to be considered in the jurisdictional analysis." (Quotation and ellipsis omitted.)

In support of his argument, Reddam cites In re Baan Co. Securities Litigation, 245 F. Supp. 2d 117 (D.D.C. 2003). In re Baan involved an investor class action filed in the United States District Court for the District of Columbia alleging federal securities violations against Baan Company (Baan), a NASDAQ-listed company that had offices in the United States, as well as against a foreign company, Vanenburg Group, B.V. (Vanenburg), and a foreign individual, J.G. Paul Baan (Paul Baan). In re Baan, 245 F. Supp. 2d at 119-21. Paul Baan served as chairman of Baan's board of supervisory directors and controlled Vanenburg along with his brother. Id. The court ultimately rejected the plaintiffs' argument that the United States could impute the court's general personal jurisdiction over Baan to Paul Baan and Vanenburg because they were "control persons" of Baan, and therefore liable for securities violations. Id. at 127-31. The court reasoned that imputing Baan's contacts to the foreign defendants would "impermissibly conflate[] statutory liability with the Constitution's command that the exercise of personal jurisdiction must be

---

[2] During the administrative proceeding, the Department took the position that it could exercise jurisdiction over Reddam pursuant to RSA 399-A:18, VI and that a separate due process analysis was unnecessary. Reddam argues that this was error because RSA 399-A:18, VI cannot support jurisdiction that would otherwise violate the Due Process Clause. In this court, the Department takes the position that its exercise of personal jurisdiction over Reddam comports with due process. Therefore, because both parties agree that the Department may exercise personal jurisdiction over Reddam if he has sufficient minimum contacts with New Hampshire such that maintenance of the suit does not offend traditional notions of fair play and substantial justice, we will confine our analysis to whether jurisdiction is proper under the Due Process Clause of the Federal Constitution.

fundamentally fair." Id. at 129. The court further reasoned that such conflation would "run[] afoul of the general rule that a defendant corporation's contacts with a forum may not be attributed to shareholders, affiliated corporations, or other parties." Id. (quotation omitted). But cf. Calder v. Jones, 465 U.S. 783, 790 (1984) (noting that employee status does not insulate a person from personal jurisdiction).

We find this reasoning persuasive. The mere fact that a corporate officer can and generally does control a corporation does not mean that the officer directed the specific actions that brought liability upon the corporation and its controlling officers. Such an officer can be liable under laws such as RSA chapter 399-A despite taking no actions to control or direct the conduct for which the corporation and its officers are liable in the forum state. For example, such an officer could have delegated his authority to an employee, who thereafter took an unanticipated action that made the corporation liable in the forum. In such a situation, the corporate officer did not purposefully avail himself or herself of the forum's laws even though by statute he or she is personally liable for the actions of the corporation. See Phillips v. Prairie Eye Center, 530 F.3d 22, 28 (1st Cir. 2008) (stating that, when analyzing purposeful availment factor of minimum contacts test, "contacts must be deliberate, and not based on the unilateral actions of another party" (quotation omitted)).

As the court in In re Baan noted, however, the forum could establish specific personal jurisdiction over a controlling officer based upon a showing that the officer participated in the unlawful conduct. In re Baan, 245 F. Supp. 2d at 130 n.18; see also Bulldog Investors v. Secretary of Com., 929 N.E.2d 293, 301 (Mass. 2010) (finding personal jurisdiction over employees of a company that offered unregistered securities to a Massachusetts resident in violation of Massachusetts law because each individual employee admitted that he provided information by e-mail to the Massachusetts resident). Thus, although we agree with Reddam that he is not subject to personal jurisdiction in New Hampshire based only upon his potential statutory liability as a control person, we agree with the Department's alternative argument that evidence that Reddam had knowledge of, controlled, and directed the respondent companies' actions that violated RSA chapter 399-A can support a finding that the Department has specific personal jurisdiction over him.

### B. Specific Personal Jurisdiction

Next, we turn to the issue of whether the Department demonstrated that it had specific personal jurisdiction over Reddam. Reddam argues that the Department lacked personal jurisdiction because: (1) his "personal contacts with New Hampshire do not relate to this enforcement action"; (2) he "did not purposefully avail himself of the protections of New Hampshire law"; and (3) "it is not fair or reasonable to require [him] to defend this suit in New Hampshire."

7

### 1. Relatedness of Contacts to Claims

We begin by examining the first factor, whether Reddam's contacts relate to the Department's cause of action. "This factor involves whether the claim underlying the litigation directly arises out of or relates to the defendant's forum-state activities." State v. N. Atlantic Ref. Ltd., 160 N.H. 275, 282 (2010). The relatedness test is a "flexible, relaxed standard." Id. (quotation omitted). "To satisfy the relatedness factor, there must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Id. (quotation and brackets omitted). "The court's assessment of relatedness is informed by the concept of foreseeability." Id. (quotation omitted).

Reddam argues that his personal contacts do not relate to the Department's cause of action because the Department alleged only that: (1) he is the president and CEO of CashCall and owns 100% of the company's corporate stock; (2) he has a mailing address identical to CashCall's mailing address; and (3) he is not licensed as a small loan lender in New Hampshire. He argues that the Department "did not allege, nor present any evidence, that Reddam had any individual involvement in CashCall's alleged conduct with respect to New Hampshire."

The Department argues that, in addition to the evidence of Reddam's positions in the respondent companies, the record also reflects that Reddam "had full authority to control, design, and direct CashCall's business activities" and is "the one running" CashCall, which "reached into New Hampshire and made contracts with New Hampshire consumers." (Quotation omitted.)[3] The Department contends that Reddam "us[ed] his authority to direct CashCall's activities" to "personally execute[] . . . the Assignment Agreement and the Service Agreement," of which the "very purpose and design was to enable CashCall to engage in payday or small loan lending in New Hampshire (and

---

[3] The Department argues that we should consider the fact that Reddam filed an individual disclosure form that accompanied CashCall's application for a mortgage banker license pursuant to RSA chapter 397-A. This evidence is not related to the Department's cause of action — alleged violations of RSA chapter 399-A. Accordingly, we do not consider it in our analysis.

The Department further argues that we should consider the fact that, after it initiated its action, CashCall applied for (and later withdrew its application for) a small loan license under RSA chapter 399-A, and Reddam submitted an accompanying individual disclosure form. Although the Department could have, but did not, present these documents during the underlying proceeding, it nevertheless requests that we take judicial notice of them in the first instance in this petition. See N.H.R. Ev. 201. Reddam argues that we should not take judicial notice of the documents because he "did not have the opportunity to develop a factual record regarding the application and his role with respect to it" and, therefore, we do not have the evidence "to properly analyze the application." Because we rule in the Department's favor without considering this evidence, we need not consider this argument.

other states) while concealing CashCall's identity as the true lender and evading regulation under New Hampshire's (and other states') licensing and usury laws." (Emphasis omitted.) Based upon our review of the record of the administrative proceedings, we agree with the Department.

The Department initiated its action against the respondents for "engag[ing] in the business of making small loans or payday loans in New Hampshire without obtaining a license to do so in violation of [RSA chapter 399-A]." The Department alleged that the respondents employed contractual and other relationships with Western Sky Financial as a mechanism by which the respondents avoided becoming licensed under RSA chapter 399-A and that CashCall operated as the "actual" or "de facto" lender for payday or small loans for itself and on behalf of Western Sky Financial. In other words, based upon the Department's allegations, the asserted purpose of this business relationship was to allow the respondent companies to unlawfully use Western Sky Financial's tribal affiliation as a shield against state lending laws, such as New Hampshire's. Reddam was directly involved with establishing these business relationships to issue small loans in violation of RSA chapter 399-A through his control of the respondent companies and his execution of the contracts that underpinned the companies' relationships.

Accepting these evidentiary proffers as true and construing them in the light most congenial to the Department's jurisdictional claim, we find that the Department has shown that Reddam's contacts with the forum relate to the cause of action. By offering evidence of Reddam's positions within the companies and his ownership interest in CashCall, the Department demonstrated that he was in a position to control and direct the actions of the respondent companies. The Department further demonstrated that, by executing the Service Agreement and the Assignment Agreement, Reddam personally participated in creating the business relationship between the respondent companies and Western Sky Financial, and that the primary purpose of this relationship was to issue small loans or payday loans without complying with state licensing and regulatory requirements, including those of New Hampshire. Viewed together, Reddam's control of the respondent companies and his personal participation in the alleged scheme that they used to issue loans to New Hampshire consumers sufficiently relate to the Department's action. See In re Baan, 245 F. Supp. 2d at 130 n.18 (explaining that a control person of an entity can be subject to specific personal jurisdiction if the plaintiff supports an allegation that the control person had knowledge of, control over, and culpably participated in the allegedly unlawful conduct).

Furthermore, we reject Reddam's argument that his actions were not related to New Hampshire because he "had no specific involvement with any loans made to New Hampshire consumers by Western Sky that were later serviced by CashCall." It would be nonsensical to hold that a person could

9

intentionally create a scheme for the purpose of violating the laws of <u>numerous states</u>, control the company that thereafter violated those state laws in accordance with the scheme, yet somehow be shielded from personal jurisdiction in each such state because he did not individually target the <u>particular</u> state's consumers.  As alleged by the Department, the scheme Reddam enacted was purposefully designed to avoid each and every state law that regulated small loan lending, including RSA chapter 399-A.  It was a foreseeable consequence of this scheme that the respondent companies would thereafter issue unregulated loans to consumers in those states, including the 787 New Hampshire consumers that the Department identified.  Therefore, we reject Reddam's argument that there was no evidence that his conduct was related to the New Hampshire activity upon which the Department's claims were based.

### 2.  Purposeful Availment

"To satisfy the second requirement, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."  <u>N. Atlantic Ref. Ltd.</u>, 160 N.H. at 283-84 (quotation omitted).  "This factor assures that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state."  <u>Id.</u> at 284 (quotation and brackets omitted).  Purposeful availment requires both foreseeability and voluntariness.  <u>Id.</u>  "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself."  <u>Id.</u> (quotation and emphasis omitted).  "The contacts must be deliberate, and not based on the unilateral actions of another party."  <u>Id.</u> (quotation omitted).  "Foreseeability requires that the contacts also must be of a nature that the defendant could reasonably anticipate being haled into court there."  <u>Id.</u> (quotation omitted).

Reddam argues that the Department did not satisfy this factor because he "filed an uncontested affidavit establishing that he does not have minimum contacts with New Hampshire and did not purposefully avail himself of the protections of New Hampshire law."  As relevant here, Reddam stated in his affidavit that he "never personally interacted with any Western Sky borrower whose loan was serviced by CashCall" and had "no personal involvement with CashCall's servicing and collection operations."

Even if we assume that Reddam's affidavit is uncontested, these statements fail to establish that he did not purposefully avail himself of New Hampshire law.  As discussed above, it is uncontested that Reddam controlled the respondent companies and personally executed the Service Agreement and Assignment Agreement.  These agreements were intended to allow the companies to issue loans to consumers in states, such as New Hampshire,

10

without complying with state laws, such as RSA chapter 399-A. The voluntariness element is satisfied because Reddam personally and deliberately took actions to set up and enable this scheme by controlling the respondent companies and executing the Service Agreement and Assignment Agreement. Moreover, the foreseeability element is satisfied because the very purpose of this business relationship was to make unregulated loans to consumers in states that regulated these types of loans, and Reddam could reasonably have anticipated being haled into court in New Hampshire because he is personally liable as a controlling person of the respondent companies for their noncompliance with RSA chapter 399-A. See RSA 399-A:18, VI (repealed and reenacted in 2015 as RSA 399-A:23, V). Thus, Reddam did not have "random, isolated, or fortuitous" contacts with New Hampshire: He implemented a scheme designed specifically to target consumers in states such as New Hampshire, and which did, in fact, result in loans to 787 New Hampshire consumers. As such, it is immaterial that Reddam did not personally interact with any New Hampshire borrowers. Accordingly, the second factor of the minimum contacts test is met.

### 3. Fairness and Reasonableness

The final requirement is whether it is fair to subject Reddam to suit in New Hampshire. In making this assessment, we look to the five "gestalt factors," which consider: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. N. Atlantic Ref. Ltd., 160 N.H. at 285-86. The gestalt factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Id.

With regard to the first factor, the burden on Reddam, he argues that he "face[s] a heavy burden litigating in New Hampshire" and that the "burden is particularly severe and unwarranted because [he] is currently subject to an enforcement action in the United States District Court for the Central District in California related to the very same 787 New Hampshire consumer loans at issue here." We agree with Reddam that, as a California resident, he faces a burden if compelled to litigate in New Hampshire. See Sweeney, 167 N.H. at 38 (noting that a burden existed on the respondent "as is always the case with non-resident respondents").

However, based upon the information Reddam has provided, the lawsuit to which he refers is an action by the Consumer Financial Protection Bureau (CFPB) against Reddam, the respondent companies, and a company that is not a party to the Department's action for violations of the Consumer Financial Protection Act of 2010 (the Act). The only information that Reddam provided

regarding this action is an opinion and order of the United States District Court for the District of Massachusetts that concludes that the "Central District of California is a substantially more convenient forum for this case than this district." This opinion and order does not identify which sections of the Act that Reddam is alleged to have violated. Although it states that "Massachusetts is one of sixteen States whose laws and public interests are implicated by the plaintiff's complaint," it makes no mention of New Hampshire law or the New Hampshire consumers to whom CashCall issued loans. Accordingly, based upon the record provided by Reddam, we have no way of discerning whether, as Reddam argues, "the CFPB seeks redress on behalf of the same New Hampshire consumers identified in the Department's [cease and desist order]." Nor do we know whether that litigation is ongoing. All that is apparent is that, in September 2015, an action by a federal agency for alleged violations of a federal law was transferred to a federal court in California. Based upon this information, we do not agree that Reddam's burden in defending allegations of culpability under RSA chapter 399-A is "particularly severe" simply because this other action may exist.

Furthermore, as the Department notes, Reddam's burden is mitigated by the fact that, as the president of both respondent companies, he "will need to continue litigating on behalf of CashCall regardless of whether he is a named party" and "almost certainly will need to appear at the hearing as a witness."

The next two factors are the Department's interests in adjudicating the dispute and obtaining convenient and effective relief. See N. Atlantic Ref. Ltd., 160 N.H. at 285. The Department has a strong interest in enforcing state laws against unlicensed small loan lenders, and the 787 impacted consumers all reside in New Hampshire. See Alacron, 145 N.H. at 630. Additionally, because the Department will still be proceeding with its action against the respondent companies, it will be convenient to resolve its action against Reddam at the same time and in the same forum, thereby eliminating any potential duplication of the proceedings.

The fourth factor is the interstate judicial system's interest in obtaining the most efficient resolution of controversies. See N. Atlantic Ref. Ltd., 160 N.H. at 285-86. Reddam argues that this factor weighs against the Department because its exercise of personal jurisdiction over him is "inefficient, inconvenient and duplicative" inasmuch as the "same New Hampshire small loans are subject to a parallel enforcement action in a California forum." As discussed above, Reddam has not provided us with a record that demonstrates that the same New Hampshire small loans are subject to a parallel enforcement action in California. Because there is no evidence in the record that there is a risk of piecemeal litigation, we do not consider this factor in our analysis. See id. at 287.

The final factor involves the "substantive social policies of the affected governments." Id. (quotation omitted). The Department argues, and Reddam does not appear to dispute, that New Hampshire has a policy interest in protecting its citizens from unregulated small and payday loans. See RSA ch. 399-A. That interest includes ensuring that when, as here, the legislature has imposed personal liability on controlling officers of corporations in certain heavily regulated industries, such officers cannot use the corporate form of doing business to shield themselves from liability. See RSA 399-A:18, VI (repealed and reenacted in 2015 as RSA 399-A:23, V). After considering all of these factors, we conclude that it is fair and reasonable to require Reddam to defend the Department's action in New Hampshire.

Therefore, because the Department has made a prima facie showing that: (1) Reddam's contacts relate to the Department's cause of action; (2) he purposefully availed himself of the protection of New Hampshire law; and (3) it is fair and reasonable to require him to defend suit in New Hampshire, we find no due process violation in the Department's exercise of specific personal jurisdiction over Reddam.[4]

Affirmed and remanded.

DALIANIS, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

---

[4] In light of our ruling on the merits of the due process issue, we find it unnecessary to address the Department's argument that Reddam consented to its exercise of personal jurisdiction over him by failing to object in a timely fashion.